Syllabus.

## Richmond.

## Vernon Fleshood v. Reuben Fleshood, by C. P. Abernathy, His Next Friend.

### December 17, 1925.

1. Parent and Child—*Custody of Child—Surrender of Custody.*—Where the parent or custodian has voluntarily surrendered the custody of the child, or abandoned it to others, and subsequently seeks to regain possession, and it appears that it is for the child's best interests to remain with those to whom its custody has been given, the court will so order. Where, however, it appears that the welfare of the child will be best subserved by taking the child away from such custody, its welfare will control. The tendency is to hold a parent to his agreement unless abuse of the agreement is shown, and the welfare of the child requires a change of custody.

2. Parent and Child—*Custody of Child—Interest of Child.*—The interest of the child is ever the dominant consideration in cases involving its custody.

3. Parent and Child—*Custody of Child—Maternal and Paternal Grandfathers—Case at Bar.*—In the instant case, the father not being in a position to take charge of the custody of his child, on the death of its mother, transferred its custody to its maternal grandfather, with whom it lived for about two and a half years. The father then, with the permission of the maternal grandfather, took the child for a visit to his second wife's people. Afterwards the child was taken to the home of its paternal grandfather, and was held there by the father whose intention was to retain possession permanently. The request of the maternal grandfather for the return of the child was refused. On *habeas corpus* it was ordered that the child be returned to the maternal grandfather. Both of the grandfathers were of excellent character and comfortably off. From these facts alone it would appear that the award of the custody of the child to its maternal grandfather was correct; but it also appeared that a wife, a son and a daughter of the maternal grandfather had died of consumption; that another son was stricken and the health of his daughter upon whom the care of the child would devolve was precarious, therefore, the Supreme Court of Appeals remanded the child to the custody of *its* father, who was required to keep it at the home of his father. The maternal grandfather and his daughter

were given the right to visit it at all convenient times, and also the
' right hereafter to show that the dangers suggested no longer existed.

Error to a judgment of the Circuit Court of Bruns-
wick county, in habeas corpus proceeding. Judgment
for petitioner. Defendant assigns error.                :

<em>Reversed and remanded.</em>

The opinion states the case.

*Buford & Raney*, for the plaintiff in error.

*Turnbull & Turnbull* and *Irby Turnbull*, for the
defendant in error.

Holt, J., delivered the opinion of the court.

This is a *habeas corpus* proceeding involving the
custody and control of Reuben Fleshood, infant son
of Vernon Fleshood, the petitioner here, and grandson
of the respondent, C. P. Abernathy.

Vernon Fleshood, the plaintiff in error, sometime
during the year 1918 intermarried with Minnie Aber-.
nathy, a daughter of C. P. Abernathy. Of that mar-
riage there was born, on May 20, 1919, a child,.
Reuben Fleshood. The mother died when he was
about eighteen months old and on November the 21st,.
1920. He was cared for by his paternal grandparents
until sometime in February, 1921, when his custody
and care was transferred to his maternal grandfather,.
C. P. Abernathy. Whether the father took this son.
to the grandfather or the grandfather himself came
for his grandson and took him home is not clear, but.
is not important. The transfer was made with the.
full consent of the father. In the spring of 1923 the.

father remarried.  His second wife at the date of her marriage lived in Petersburg and was between twenty and twenty-one years old.   In September following the father went to Mr. Abernathy's home and asked permission to take his child to Petersburg to visit his wife's people.   This permission was granted.   The child was afterwards taken to the home of F. F. Fleshood, Vernon Fleshood's father, and was held there by the father whose intention was to retain possession permanently.   The request of Mr. Abernathy that he be returned to him was refused and this proceeding was instituted for his recovery.   A writ of *habeas corpus* issued on September 29, 1923, and on October 23, 1923, final order was entered awarding the child to the grandfather, as prayed for in his petition.   To this action of the court exception was duly taken.  Petition for writ of error and supersedeas was presented and awarded on January 29, 1924.

The law governing litigation of this character is well settled.   A decision on the facts is frequently difficult and always important.   No class of cases imposes upon courts graver responsibilities.

This satisfactory statement of its present status appears in a note, Vol. 31 Am. & Eng. Anno. Cases, page 758, and accords with the conclusion of this court written into many of its decisions.

[1] "Many cases hold that where the parent or custodian has voluntarily surrendered the custody of the child, or abandoned it to others, and subsequently seeks to regain possession, and it appears that it is for the child's best interests to remain with those to whom its custody has been given, the court will so order.  This is especially true where it is shown that the child is well provided for in its new home, is surrounded by influences likely to promote its best in-

terests, and where tender relationships and affections have sprung up between the child and those with whom it has been living. Where, however, it appears that the welfare of the child will be best subserved by taking the child away from such custody, its welfare will control. And while formerly the courts were more indulgent in permitting the father to repudiate an agreement as to custody on the ground of his superior rights, the tendency of the latter decisions is to hold him to his agreement unless an abuse of the agreement is shown, or the welfare of the child requires a change of custody." *Stringfellow* v. *Somerville*, 95 Va. 701, 29 S. E. 685, 40 L. R. A. 623; *Coffey* v. *Black*, 82 Va. 567; *Taylor* v. *Taylor*, 103 Va. 750, 50 S. E. 273; *Parrish* v. *Parrish*, 116 Va. 476, 82 S. E. 119, L. R. A. 1915A, 576; *Wyatt* v. *Gleason*, 117 Va. 196, 83 S. E. 1069; *Cover* v. *Widener*, 125 Va. 643, 100 S. E. 459; *Hutchinson* v. *Harrison*, 130 Va. 305, 107 S. E. 742; Hurd on Habeas Corpus, 482.

[2] Many citations might be added but through them all runs the fixed purpose to advance the interest of the child. This is ever the dominant consideration. The rights of the father are to be remembered. Ordinarily no other man has its interests so deeply at heart. Pecuniary considerations have some weight, but no court would undertake to transfer the custody of a child from a worthy father to an opulent would-be foster parent. Its welfare is weighed in connection with these considerations, and we reach the conclusion that as a general proposition, and in the main, it will be best promoted by having him cared for by the one who loves him best. This in its turn is not a universal rule. The father might be loving and dissolute. Coming back to the facts in the case in judgment, the evidence shows that the father, who could not well

help himself, turned over to the grandfather the care of his son. This grandfather, who appears to be a man of high character, has discharged with fidelity every duty devolving upon him. He is not rich, but comfortably circumstanced, able and willing to do everything necessary in reason for his grandson. Generous and loving his conduct has been beyond criticism. He bore the expenses of his daughter's last illness; he has cared for her child; loaned money to his son-in-law, and actually gave him money to meet the expenses of his second marriage. His tangible property consists of a store, storehouse and several hundred acres of land. It is over this storehouse building that he lives and living with him is his daughter, Ella, a son Robert and the wife and five children of another son, Hubert. He is a widower fifty-six years old.

Vernon Fleshood is twenty-seven. He has no property and has never had any. He has no home of his own, but lives with and works for his father, who for his services furnishes board to him and wife and pays him wages, $1.50 a day. This father is sixty-nine years old and blind. His household consists of himself, his wife, Vernon and his wife and two other sons. He also is an excellent man with a fairly comfortable home, though not so prosperous as Mr. Abernathy. Vernon has done nothing for his son since the mother's death and appears to have manifested relatively little interest in his welfare.

[3] With these facts alone before us we would have no difficulty in reaching the conclusion that the child's custody should remain with the Abernathy grandfather.

What gives us pause and makes a decision extraordinarily difficult is the history of this Abernathy home.

A wife, a son and a daughter have died of tuberculosis. Another son, Hubert, is stricken and at Catawba while the health of his daughter Ella is, to speak with restraint, precarious. Upon her alone would devolve its care.

In these circumstances to remand Reuben to that home is to invite irreparable disaster and this the Abernathy grandfather, who loves it dearly, should be the first to recognize. He is not particularly robust. With his inherited tendency expert evidence is not necessary to tell us of the danger that would be incurred, for as was said in *Louisville, etc., R. Co.* v. *Birochik,* 207 Ky. 595, 269 S. W. 720: "The members of this court are not going to pretend to be more ignorant than the rest of men, or that matters of common knowledge are not also known to them."

Any judgment must seem hard and from some angles harsh. The decision of this question must not rest upon consideration either of the father or of the grandfathers. These grandfathers are equally affectionate and are equally anxious to assume the burden of caring for this grandson.

We are driven to the conclusion that this child should not remain, in circumstances as they exist today, in the Abernathy home, if it can be avoided. Therefore, it is remanded to the custody of his father, who is required to keep it in the home of his father, F. F. Fleshood, Sr. C. P. Abernathy and his daughter Ella are given the right to visit it at all convenient times. He may also hereafter show that the dangers suggested no longer exist. This application is retained upon the docket of the court below that he may, when the facts warrant it, apply for a rehearing. This case is remanded to be dealt with as here ordered.

Other matters have been presented for our con-

sideration, but since the conclusions reached finally dispose of the custody of the child, which is the issue in this case, we deem it unnecessary to discuss them.

The judgment of the court below is reversed and the child is awarded to the father to be held subject to the conditions herein provided for.

*Reversed and remanded.*