# 𝕾taunton

Reese E. Surber v. Ella May Surber Bridges, et Als.

September 22, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*J. Powell Royall,* for the appellant.

*John R. Boggess, G. B. Johnson* and *James W. Harman,* for the appellees.

HOLT, J., delivered the opinion of the court.

In this litigation a father, who has obtained an absolute divorce, is asking that there be awarded to him the care and custody of his two younger children, Will Reese Surber and Kathleen Surber.

In April, 1922, the plaintiff filed his bill in the circuit court of Tazewell county in which he charged his wife was

living an adulterous and profligate life. He sought an absolute divorce and the custody of the two older children, Josephine and Charles Stevens Surber.

On May 8, 1922, his wife filed her answer and cross-bill in which she denied charges of misconduct on her part, but preferred like charges against her husband. Depositions were taken and that cause came on to be heard in due course. A decree was entered on November 22, 1922, which is in part as follows:

"Upon mature consideration thereof, and it appearing to the court that the said Reese E. Surber, the complainant in this cause, has by ample, legal and sufficient proof fully sustained the allegations in his bill as alleged against the said Ella May Surber for divorce, and in the opinion of the court is, therefore, entitled to the relief prayed for in his bill filed in this cause.

"The court doth therefore adjudge, order and decree that the said Reese E. Surber and the said Ella May Surber be, and they are hereby absolutely divorced from the bonds of matrimony created by their marriage, and that the said bonds of matrimony be, and the same are hereby dissolved and annulled, but neither of said parties shall marry again for a period of six months from the date of the adjournment of this court.

"And the court doth further adjudge, order and decree that the said Josephine Surber, Charlie Stevens Surber, Will Reese Surber and Kathleen Surber, infants mentioned in the bill in this cause, shall remain in the custody of their mother, the said Ella May Surber, until further order of this court, but the said Reese E. Surber is hereby granted the right and privilege to visit the said children at all times until further order of this court. And it is further adjudged, ordered and decreed that the said Reese E. Surber shall continue to pay to the said Ella May Surber, for the maintenance and support of said four children, the sum of $25.00 per month until further order of this court; the said sum to be payable on the 15th day of each month and to be

expended by the said Ella May Surber only for the maintenance and support of said four infant children."

It will be observed that the father, in the first instance, wished to take over his two older children. They are now practically emancipated, and it is the custody of the two younger children which is in issue here.

On May 4, 1923, plaintiff filed his petition in the original suit, in which he again asked that he be given the custody of his daughter, Josephine, then eleven years old, and his son, Charlie, then nine years old, and in its support said that his divorced wife was continuing to lead an adulterous and profligate life and was then pregnant by some man unknown.

On May 16, 1923, the defendant filed her answer in which she denied misconduct. She admitted she was pregnant, but said the plaintiff came to her house in November, 1922, told her he had dismissed his divorce suit, and resumed marital relations. No evidence seems to have been taken upon this petition and answer, and on February 26, 1926, the court entered this decree:

"This cause came on again this day to be heard upon the papers formerly read in this cause, and upon the petition of Reese E. Surber, filed in this cause.

"Upon due consideration whereof, and it appearing to the court that for the present, it is best to leave the children mentioned in the petition in the care and custody of their mother, until further orders of the court, and it is, therefore, adjudged, ordered and decreed that the said children shall remain with their mother until further orders of the court; and it is further adjudged, ordered and decreed that the said Reese E. Surber, shall continue to pay the sum of $25.00 per month for the support of the infant children, but instead of paying same to the mother of said children, that the said sum of money shall be paid to Judge J. B. Boyer, judge of the juvenile court, who will see that the same is used for the benefit of the four children of the petitioner and defendant, and to pay at once the sum of $25.00 to

W. B. Spratt and J. R. Boggess, as counsel, representing
said children. And this cause is continued."

In August, 1931, plaintiff filed another petition in the
cause. In it he sets out the fact that his daughter, Josephine,
is now over nineteen and married, and that his son, Charlie,
is now over seventeen. He asks that he be relieved from
contributing further to their support, and that there be
given to him the care and custody of his two younger chil-
dren, Willie and Kathleen. That petition the defendant
has answered. She again charges that her fifth child is the
child of the plaintiff, and has testified to the manner of its
conception as heretofore stated. Plaintiff's evidence is
that he has never spoken to his wife since he filed his bill
for divorce.

The trial court must have been of the opinion that this
fifth child, certainly born out of wedlock, was not the plain-
tiff's child since no provision for its support was decreed.
It did, however, on August 21, 1931, decree in part as
follows:

"This cause came on to be heard * * * upon the testimony
taken on behalf of petitioner and said defendants, heard
orally in open court, and which said testimony was also
taken and transcribed, and hereby ordered to be made a
part of the record in this cause, and argument of counsel.

"Upon mature consideration, the court is of the opinion
and doth so adjudge, order and decree that it is to the best
interests of Willie Reese Surber and Kathleen Surber, the
two infants mentioned in the petition of said Reese E.
Surber, that said two infants remain with their grand-
parents, the said C. S. Harris and Josephine Harris, and in
order that this may be done, that the care, custody and
control of the said Willie Reese Surber and Kathleen Sur-
ber, be, and the same is hereby awarded, as heretofore and
until further order herein, to their mother, Ella May Surber
Bridges, to which ruling of the court the petitioner, by
counsel, excepted.

"It is further adjudged, ordered and decreed that Reese E. Surber shall, on or before the 1st day of September, 1931, pay to Ella May Surber Bridges, the sum of $50.00, being the amount heretofore ordered by the court to be paid by him on payments heretofore ordered, for the maintenance and support of the four infant children born of the marriage between Reese E. Surber and Ella May Surber; and being in full satisfaction of all amounts of which the said Reese E. Surber is now in arrear.

"It is further adjudged, ordered and decreed that Reese E. Surber pay to E. J. Boyd, president of the First National Bank of Honaker, Virginia, the sum of $15.00 per month for the maintenance and support of said Willie Reese Surber and Kathleen Surber, and which payments shall begin to be paid on the 1st day of October, 1931, and on the 1st day of each month thereafter, until further order of this court, to which ruling of the court petitioner, by counsel, excepted."

It will be noted in this decree that while the court was of opinion that the best interests of these children would be subserved by permitting them to remain with their grandparents, the parents of Mrs. Surber, it remanded their control to the mother.

In cases of this kind we have said that the welfare of the child is the paramount consideration. *Hayes* v. *Strauss,* 151 Va. 136, 144 S. E. 432; *Fleshood* v. *Fleshood,* 144 Va. 767, 130 S. E. 648; *Wyatt* v. *Gleason,* 117 Va. 196, 83 S. E. 1069.

This statement, so often made, is not unqualifiedly true. Parents, too, have rights which must be safeguarded. *Fleshood* v. *Fleshood, supra; Cover* v. *Widener,* 125 Va. 643, 100 S. E. 459.

"Such consideration for the welfare of the child, however, does not mean that its custody may be auctioned off to him who will make the highest bid in the shape of greater financial standing, more comfortable surroundings, or larger opportunities for the future. If a good and suitable home

is ready and offered by one attached by the ties of nature to the child, those ties can neither be disregarded nor severed because some one better situated is able to offer more." *In re Bare's Guardianship,* 170 Wis. 543, 174 N. W. 906, 907; *Jamison* v. *Gilbert,* 38 Okla. 751, 135 Pac. 342, 47 L. R. A. (N. S.) 1133; *Buchanan* v. *Buchanan,* 93 Kan. 613, 144 Pac. 840.

A father who has done nothing to forfeit his rights and who is a man of good character, possessed of a decent home, should not be deprived of his children even by a Croesus or an Archbishop of Canterbury, and this holds though he be poor and a pagan, and although measured by every ordinary standard the "interest" of the child would be advanced. If it be said that the interest of the child is the test, then the law in such a case, and where there has been no voluntary surrender, conclusively presumes that its interest will best be subserved by its parent's loving care.

The Code of Virginia, section 5320, as amended by an act approved March 24, 1930 (Acts 1930, page 686, chapter 264), has seen fit to limit a parent's rights in cases of divorce as follows: "If the father and mother be living apart, whether partially or absolutely divorced or not, a court of competent jurisdiction, in awarding the custody of the child to either parent or to some other person, shall give primary consideration to the welfare of the child, and as between parents there shall be no presumption of law in favor of either parent."

We must assume that some change in the law was intended. It places the children of a home so disrupted in a class apart. The parents' rights are subordinated and those of the children are augmented to a degree not elsewhere reached.

We have seen that the trial judge heard the witnesses in open court. His opportunities for weighing their testimony far exceeds ours, and his judgment is to be viewed as a jury's verdict. *Newton* v. *White,* 115 Va. 844, 80 S. E. 561; *Hayes* v. *Strauss, supra.*

The father has been buffeted by ill luck. Himself without fault, he was permitted to divorce an unworthy wife. These children the trial court then thought were too young to be separated from their mother. She had no home of her own and took them to her parents. They naturally sympathized with their daughter. They do not like the father and say so. When Mr. Harris was asked what would happen to the father if he attempted to visit his children he made this significant answer: "I do not know." Mr. Surber seems to have known for he did not go. In such an atmosphere that has happened which might have been expected to happen—the children have no affection for their father and wish to stay with their grandparents. This situation, due to no shortcoming of the father, is to be deplored, but we must face the facts. To send them now to live with him against their wishes would be a hazardous experiment —too hazardous the trial court thought, and we cannot say that it was wrong. These grandparents are excellent people. They have a good home in a good neighborhood with adequate school facilities and wish to keep the children with them; the children wish to stay. Mr. Surber also is shown by this record to be an upstanding man. He lives with his mother and has recently married a girl twenty years old who, herself, stands well and is willing to assume the responsibilities which their coming might entail; but this in turn presents a problem. Just how this young woman would get along with a stepson nearly her age, who did not wish to live with her, no one knows.

The father through all these years has, with insignificant exceptions, and those due to unavoidable conditions, paid by way of support money all he was told to pay. He should be required to pay no more. Since he cannot visit in safety the Harris home, the trial court, to which we shall remand this cause, should make proper provisions for visits from the children to him.

The mother, soon after her divorce, married some man, whose name the record does not show. It turned out that

he already had one wife living, and they were divorced. She afterwards married a Mr. Bridges and now lives in West Virginia. Her character is certainly not beyond reproach, and so she should be denied control. That control must be vested in the grandparents and not in her.

Modified in these respects the decree appealed from should be affirmed, and it is so ordered.

*Modified and affirmed.*