# Richmond

VIRGINIA RODGERS DARNELL v. JOHN EDWARD BARKER.

January 19, 1942.

Record No. 2464.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Charles G. Stone, R. Gray Williams* and *J. Sloan Kuy-kendall,* for the appellant.

No appearance for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On July 15, 1938, Virginia Rodgers Barker, now Virginia Rodgers Darnell, filed a suit for divorce in the court below

against her husband, John Edward Barker, charging him with cruelty and desertion. As an incident to the suit for divorce, the wife prayed that she be awarded the custody of their eight months old son.

The allegations in the bill were fully proved by the depositions of the wife and supporting witnesses. The evidence showed that the husband drank to excess, abused and threatened his wife with bodily harm, and on one occasion struck her with such violence that she had to be attended by a physician. Finally he deserted her and their baby with the intent never to return. It also developed that the husband was impecunious and that during their married life, which lasted for a little more than two years, he had contributed practically nothing to the support and maintenance of his family. This expense had been borne by the wife out of her independent means.

While the husband filed an answer denying the charges of cruelty and desertion, he offered no evidence in support thereof. The answer admitted the wife's "temporary right" to the custody of their infant son "due to his tender years," provided he (the husband) be given the right to see the child "at reasonable times."

On October 21, 1938, the court entered a decree adjudging the husband to be guilty of wilful and unjustifiable desertion and granting the wife a divorce from bed and board. By the terms of this decree the wife was awarded the custody of the child, subject, however, to the right of the husband to visit the child at the home of his grandfather, Captain C. R. P. Rodgers, in Fauquier county, from eleven A. M. until noon on the first Sunday in each calendar month, until the further order of the court. The decree also provided that the cause be retained upon the suspended docket for such further proceedings as the parties might thereafter be advised to take.

On September 29, 1939, the death of Captain Rodgers was suggested by a motion of the defendant husband, and a decree was entered directing that the husband be permitted to visit the child at the home of the husband's sister in War-

renton for one hour on the first Sunday in each calendar month. Subsequently the date for the husband's visit was changed to the first Thursday in each calendar month, with the added provision that in the event of the child's illness or bad weather conditions on the first Thursday, then the husband should be permitted to see him on the next succeeding Thursday in each month.

On July 17, 1940, upon the petition of the wife, supported by proper evidence, the decree of divorce from bed and board was merged into a decree of absolute divorce, with the further provision that "the former decrees entered herein respecting the custody of the child shall remain in force until the further order of the court."

On December 27, 1940, the wife filed in the cause a petition alleging that on January 17, 1941, she planned to marry Carl Darnell, a captain in the United States Army, who was then stationed at Fort Myer, Virginia; that Captain Darnell would be transferred to Fort Riley, Kansas, in February, 1941, where she intended to take her infant son to make his home with them; and that thereafter it would be impossible for her to comply with the terms of the decree requiring her to take the child to the home of the husband's sister in Warrenton once a month for the scheduled one-hour visit by his father. The petition concluded with the prayer that the cause be restored to the active docket; that the custody of the infant child be continued with the petitioner; that an appropriate decree be entered modifying the terms of the former decree with respect to taking the child at the stated times to Warrenton for the scheduled visit by his father; and that instead it be decreed that the divorced husband be accorded the right to visit the child "at reasonable and proper times and at such places where the child may be residing with your petitioner."

The divorced husband promptly filed an answer to this petition objecting to the modification of the decree as prayed for, and alleging that it was his intention to remarry in the near future, and that thereafter he would be able to maintain a proper and suitable home in Warrenton for the upbring-

ing of his infant son. Accordingly, he prayed that he be awarded the custody of the child for the months of July and August of each year; that the mother be given the custody for the remaining months in the year; that the mother be required to pay a part of the cost of transporting the child from her home, wherever that might be, to Warrenton; that the mother be required to furnish security for her due compliance with the decree of the court awarding to him partial custody of the child; and that should she be unwilling to give such security that he then be awarded the absolute and entire custody of the child.

On January 2, 1941, the matter came on to be heard on the petition filed by the mother, the answer filed by the father, depositions taken in support of the petition, and evidence submitted by both parties and heard *ore tenus* by the trial court. At the conclusion of the hearing the trial court decreed that the father should have the custody of the child for the month of June in each year, and the mother for the remaining eleven months. The decree also provided that the cost of transporting the child from the home of the mother to the home of the father, at Warrenton, on the first day of June of each year, be borne by the father, and that the cost of transporting him from Warrenton to the mother, or to such place as she might direct at the end of the month of June of each year, be borne by her.

On April 25, 1941, the mother, who had in the meantime married Captain Darnell, filed in the cause a petition in which she reviewed all the facts and circumstances regarding her marriage to John Edward Barker, her divorce, and the proceedings and decrees relative to the custody of her infant son. She alleged that since she and her child had been deserted by the husband, in July, 1938, they had made their home with her mother, Mrs. Coffin, in Washington, D. C., where the child had been given every necessary comfort and attention, and that it would not be to his best interest or welfare that he be taken into his father's home at Warrenton, even for the period of one month during the year, where

his surroundings would be strange and the necessary medical care would be lacking.

The petition further alleged that due to the inability of the mother and her husband, Captain Darnell, to obtain satisfactory living quarters at the military reservation at Fort Riley, the child had not been taken there but had been left with his grandmother, Mrs. Coffin, in Washington. It further alleged that it would be to the best interest of the child that he be left with his grandmother, either at her residence in Washington or at her summer home in Massachusetts, for the month of June, 1941, and suggested several plans whereby the child, while in the care and custody of his grandmother, could be visited by his father instead of being delivered to the latter at Warrenton, as had been ordered in the decree entered on January 2, 1941.

Accordingly, the petition prayed that the matter be re-heard, that the mother be allowed the absolute custody of the child, and particularly that the delivery of the custody of the child to his father at Warrenton for the month of June, 1941, be deferred.

The father answered the petition denying that there had been any change in the conditions which justified a modification of the decree of January 2, 1941.

After a hearing, at which all the former evidence in the proceedings was reviewed, and further evidence was taken *ore tenus*, the court declined to modify its previous decree and reaffirmed its decision to deliver the custody of the child to his father for the month of June, 1941, and each succeeding June, with the added provision that while the child was in the custody of his father, during the month of June, 1941, he was to be visited weekly by a specified physician, who was to report to the court his findings on the infant's "health and well-being," and whether his health was being "adversely affected by his visit to his father."

From the two interlocutory decrees entered on January 2 and April 25, 1941, respectively, the mother has taken this appeal.

It is not necessary that we review in detail the evidence

adduced at the hearings held on January 2 and April 25, 1941, which resulted in the decrees appealed from. It conclusively shows that the court was fully justified in having awarded the absolute custody of the child to the mother in the divorce decree of October 21, 1938, and that the continuation of such control and custody in her had been decidedly for the child's best interest and welfare. It likewise appears that since the separation of the child's parents, in July, 1938, he and his mother have been given a happy and congenial home by his grandmother, Mrs. Coffin, a person of both means and refinement. There, in proper surroundings, the child, who is inclined to be delicate, has had every necessary comfort and attention, including the services of a well-trained nurse, and all of this without any financial assistance whatsoever from his father. It also is clear that the mother's second husband, Captain Darnell, has an affectionate regard for the child, and that he and his wife will be amply able to rear the child in comfort and in accordance with the station of life to which he has become accustomed.

The evidence is undisputed that at the time of the divorce the father was a man of intemperate habits and was guilty of cruel and inhuman conduct toward his wife, the present appellant. There is not a line of testimony in the record, either from the father who took the stand or from supporting witnesses, to indicate that his habits or disposition have since changed. His business is that of buying and selling blooded horses, from which he derives a precarious income. He was unable to state what his income or profits were for the year 1939 or 1940. He admitted that he was indebted to a considerable extent, that he had no property of his own, and that even the house which he claimed to be his own, and where he is now residing since his recent remarriage, stands in the name of one of his sisters.

It is true that the record shows that on February 26, 1941, the father married a widow who is a person of high character and who has successfully reared a family of her own. She testified that she is willing to undertake the care of the

child during the time that his custody may be allotted to her husband. But it also appears that this lady is a total stranger to the child, that she has seen him only twice, and that she knows nothing of his habits or characteristics. She frankly admitted that she had no personal interest in the child other than that he was the son of her present husband.

We have many times said that in determining the custody of a child of tender years, the primary consideration is the interest and welfare of the child. *Fleshood* v. *Fleshood*, 144 Va. 767, 770, 130 S. E. 648; *Stringfellow* v. *Somerville*, 95 Va. 701, 706, 29 S. E. 685, 40 L. R. A. 623; *Merritt* v. *Swimley*, 82 Va. 433, 437, 3 Am. St. Rep. 115.

Ordinarily, a change in the custody of a child of tender years should be based on some change of condition which is for the better interest and welfare of the child.

In the decree of January 2, 1941, the court stated that it had based its holdings not only upon the pleadings and evidence submitted to it, but also "upon facts that the court knew of his own knowledge and so stated by it to counsel and the respective parties." Just what these "facts" are is not disclosed in the record, unless they are covered by the court's statement that, "I know all of these people are decent and respectable people." At any rate, the consideration of such facts outside the record was objected to by counsel for the mother, and properly so.

While courts take judicial notice of such facts as are commonly known from human experience, "facts which are not judicially cognizable must be proved, even though known to the judge or to the court as an individual. In other words, the individual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record." 20 Am. Jur., Evidence, sec. 21, page 52. See also, Wigmore on Evidence, 3d Ed., Vol. 9, sec. 2569, p. 540.

As we have pointed out, there is nothing in the record to indicate that there has been any change of condition which demands a change in the custody of this child. In the decree

of divorce the lower court gave the absolute custody of the child to the mother because that was for the best interest of the child, because the mother was a fit person, and because she was the innocent party in the proceeding. It denied custody of the child to the father because that was for the best interest of the child, because the father was an unfit person, and because he was the guilty party in the divorce proceeding. There has been no change in this situation. Unquestionably the mother is still a fit person to have the custody of the child. By her remarriage she has forfeited none of her rights. On the other hand, there is no proof whatsoever that the father is any more fit to have the custody of the child now than he was at the date of the separation.

▮▮ Of course, in awarding the custody of a child, the ties of affection between it and the parent and the rights of the latter should be respected. In the case before us it is entirely proper that reasonable provision be made for the father to visit and see his son, wherever the latter may be. But, in our opinion, it is not reasonable to order that this child at its present age be transported back and forth across the continent in order that the father's wish may be gratified. If the conditions under which he is to visit the child are burdensome to him, or even if they are such that he cannot comply with them, this is a situation for which he alone is to blame. It was he who broke up the family and deserted the child.

Moreover, it will be recalled that when the mother was awarded the custody of the child in the divorce decree, the father was given the opportunity of seeing him one hour during each month. Apparently this arrangement was entirely satisfactory to him until his divorced wife called to the court's attention her intention to remarry, her desire to remove the child beyond the limits of the State, and the necessity for a change in the conditions under which he may be visited by his father. Then, for the first time, the father expressed a desire to share in the custody of the child. An interest so delayed and thus aroused is not calculated to excite much sympathy.

But aside from this, there is nothing in the record to justify the lower court in dividing the custody of the child between the mother and the father at this time. On the contrary, we think the interest and welfare of the child demand that at its present tender age he be allowed to continue to make his home with his mother.

The decrees appealed from will be reversed and the cause remanded with direction that the custody of the child be continued in his mother for the present, and that the father, at his own expense, be permitted to visit and see the child from time to time, wherever he may be, upon such reasonable conditions as may be determined by the lower court.

*Reversed and remanded.*