# Richmond

RICHARD N. SUTTON AND EDITH G. SUTTON v. WILLIAM A. MENGES.

October 13, 1947.

Record No. 3236.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Jesse, Phillips, Klinge & Kendrick*, for the plaintiffs in error.

*Charles Pickett* and *Abel Klaw*, for the defendant in error.

*HOLT, C. J., delivered the opinion of the court.

Betty Rose Sutton and William A. Menges were married in Maryland in 1931. They then went to Ohio to live and continued to live there until 1934, when they moved to Delaware and to Wilmington. Mr. Menges was there employed by the DuPont Company as a chemical engineer and has continued in its employment until today. His salary is now $560.00 a month.

Of that marriage two children were born, Betty Sutton Menges, now aged fourteen, and William Richard Menges, now aged twelve. Neither in Ohio nor in Delaware were

*Note.—This opinion was prepared by former Chief Justice Holt before his death and is adopted as the opinion of the Court.

these people ever permanently established in their own home but lived from time to time in divers places.

In June, 1945, Mrs. Menges, taking with her these children, left Delaware and came to Arlington county, Virginia, and to the home of her parents, Richard N. Sutton and Edith G. Sutton.

These parents, taking Mrs. Menges with them, later moved to Fairfax county. In the meantime, Mrs. Menges, in July, 1946, filed a suit for divorce in Arlington county. In it she set out the fact that she had not been in good health; that her husband for a long time had contributed nothing to her support or to the support of their children; that he had inflicted upon her great mental suffering; that he had knocked her down and dragged her down the stairs; that he had threatened to kill her; that he had thrown bedroom furniture and accessories out a second-story window and had misconducted himself in divers other ways; whereupon, in fear of her life, she had left her home, taking her children with her, and had come to Virginia.

The prayer of her bill is that she be awarded a decree of divorce *a mensa* on the ground of wilful desertion and that this decree be later merged into one *a vinculo;* that she be awarded the custody of their children and be given a temporary allowance for their maintenance, afterwards to be merged into a permanent one for their support, etc.

While this suit was pending, Mrs. Menges on October 22, 1946, died suddenly and unexpectedly.

Two days after her death, and on October 24th, Mrs. Menges' father and mother, who were, of course, the grandparents of these children, filed on their own behalf a suit in equity, in which they charge that the father had manifested no interest in his children for a long period of time prior to the death of their mother; that it had been necessary for petitioners to contribute to their support and maintenance; that the children were then living with them and attending school in Arlington county, and that they feared that the father might seize them and take them beyond the jurisdiction of the court in Virginia.

Their prayer is that the care and custody of these grand-children be continued permanently where it then was, and that the father be enjoined from removing them from the jurisdiction of that court. Service was by publication, and an *ex parte* order was entered, restraining the father from interfering with the custody of these children, said order to remain in force for thirty days, unless sooner dissolved or enlarged.

On November 16, 1946, Mr. Menges, the father, filed his petition, praying that a writ of habeas corpus issue; that these grandparents be required to produce these children in court, and that their custody be awarded to him.

On November 27, 1946, an intervening petition was filed by William L. Bragg, Jr., and Gola Mae Bragg. Mrs. Bragg was a sister of Mrs. Menges, then dead. She set out that these children were living with her in Arlington County that they might attend school there and asked that the court deal with their custody.

The trial court, with these causes before it, and with all the evidence presented, much of which was heard in open court without the intervention or aid of a jury, together with the depositions of certain witnesses taken without the State, and after elaborate argument, reached this conclusion:

"* * * the court being of opinion that the said William A. Menges is a fit and proper person to have the care, custody, and control of said children, and the said bill of complaint should be dismissed and the temporary injunction entered thereon should be dissolved and that the petitioner, William A. Menges, father of the infant children, Betty Sutton Menges and William Richard Menges, is entitled to the custody of the said children, it is therefore

"Adjudged and ordered that the said bill of complaint be dismissed and the said temporary injunction entered thereon be and the same hereby is dissolved; and is is further

"Adjudged and ordered that the said infant children, Betty Sutton Menges and William Richard Menges, be and

the same hereby are awarded to the custody of their father, William A. Menges."

What weight attaches?

We have here the judgment of a court, largely based upon testimony heard *ore tenus,* and so it carries with it the weight of a jury's verdict.

■ "Upon a hearing before a judge without a jury, the finding of the judge upon the credibility of witnesses and the weight to be given to their testimony stands on the same footing as the verdict of a jury. *Rogers* v. *Commonwealth,* 132 Va. 771, 111 S. E. 231; *Bunkley* v. *Commonwealth,* 130 Va. 55, 108 S. E. 1; *Twohy* v. *Twohy,* 130 Va. 557, 107 S. E. 642; *Mowles* v. *Mowles,* 137 Va. 274, 119 S. E. 54." Va. and W. Va. Digest, Vol. 1, p. 497. See also, *Ewell* v. *Lambert,* 177 Va. 222, 13 S. E. (2d) 333, and Code, section 6363.

■ What rule do we follow when there is conflict in evidence taken in the form of depositions?

Other things being equal, the trial court is apt to give precedence to weight, but on appeal that rule does not necessarily prevail. But whether the judgment of the trial court be supported by the weight of evidence or not, it is presumed to be right. The burden is on one who assails it to show that it is wrong. *Christianson* v. *Brosius,* 184 Va. 958, 37 S. E. (2d) 50.

We may restate the status of these litigants. If this were a verdict in a jury trial which rested in part upon evidence heard in open court and in part on depositions, we could not disturb it, even if there were a conflict, unless that verdict was plainly wrong or without evidence to support it. Code, section 6363. By the same token, and under the same statute, though evidence was presented here in these two forms, we cannot disturb it, unless the court's judgment was plainly wrong or without evidence to support it. It is adequately supported.

■ This is not a contest between husband and wife; the wife is dead. Grandparents, as such, do not stand *in loco*

*parentis.* *Wilson* v. *Mitchell,* 48 Colo. 454, 111 P. 21, 30 L. R. A. (N. S.) 507.

 To separate a child from its parents, the evidence of their unfitness must be cogent and convincing. *Pierce* v. *Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A. L. R. 1502; 39 Am. Jur. 597.

Indeed, the common law right of a father to keep with him his legitimate children, when the mother is dead, is not questioned.

But it is said that the welfare of the child is a paramount consideration, and in support of that proposition half a page of cases are cited. Michie's Digest, Va. & W. Va. Reports, Vol. 7, p. 881.

This general rule is to be applied *sub modo:* No court would take from an upright and indigent father the custody of a child and give it to Croesus, though Croesus might promise to rear that child in luxury and to make it his heir. While one might think to inherit unlimited fortune would be to the interest of the child, yet within the purview of no decided case has it ever been so held.

In *Stringfellow* v. *Somerville,* 95 Va. 701, 29 S. E. 685, 40 L. R. A. 623, cited with approval in *Cover* v. *Widener,* 125 Va. 643, 100 S. E. 459, Keith, P., said:

 "The question is not which of the two claimants can surround the infant with greater luxury, or which of the two will be able to give or bequeath him the greater amount of money or property, but with which of them is he likely to be reared and trained so as to make him the better man and the better citizen."

It may be said with confidence that no court will take a minor child from decent and upright parents although they be among the humblest members of the widespread John Doe family and although the petitioner be a millionaire, or one whose social preeminece traces itself back to all the blood of all the Howards. 39 Am. Jur. 611.

Here the evidence is in the form of testimony given in open court and depositions taken in Delaware. To undertake to discuss it in detail would be unfruitful.

Mr. Menges, testifying in his own behalf in open court, was examined and re-examined at length. His examination covers more than twenty pages of printed matter. He tells us that he is a member of the DuPont corps of technical expert chemists and has been from 1934. He is still there employed with a salary of $560.00 a month. He said that when his wife left him he expected her to return; that he visited her in Virginia; that the children visited him in Delaware, and that he made some contributions to their support after they left him. He said that he was not guilty of the misdeeds charged against him by his wife in her bill for divorce; that he did not drink to excess, and that while he was fond of society, there was nothing unusual about his contacts with it.

Mr. Richards, for ten years, has worked in the DuPont Organic Chemicals Department and knew Mr. Menges well. He said that sometimes at cocktail parties, Mr. Menges would get a little gay, but that in his judgment he was well capable of taking care of and rearing his children.

Mr. Roberts is employed in the Industrial Engineering Department. He said that Menges was a hard-working and competent employee. He said that both he and Mr. Menges drank, danced and conducted themselves as people usually do at parties. He further said that in his judgment, "Bill would be a fit father."

Dr. Gehrmann, who is a DuPont Medical Director and professor in the Virginia Medical School at Richmond, said that Menges had "a very good reputation around here. * * * He is regular in his work. I know he is temperate in his habits. I know he has a reputation of being a clean liver, and when I say that I mean morally, and you would be surprised what I know about a lot of people."

Mr. Van Ness is General Director of the DuPont Industrial and Development Engineering Divisions and has been for a number of years. He said about Menges that "he is very highly regarded by his supervision and has, as far as I know, every chance of promotion."

Dr. Haedrich is a Chemical Engineer for the DuPont Company. He was asked what he thought about Menges' reputation for morality and good character. That was objected to by counsel for defendants. After inconsequential cross-firing by counsel, he closed by saying: "I have never seen any instance of anything in his actions which would indicate ungentlemanly conduct, or anything that could be described as immoral. I have seen Mr. Menges, on occasion, under the influence of alcohol but I would say that he holds his alcohol pretty well."

For the defendants, one witness, a woman, deposed and said that his reputation for sobriety and morality was bad. Another witness in her deposition said: "In the crowd that I go around with when Mr. Menges' name is brought up it has become the habit to make caustic remarks about him, and it has become rather a laughing matter. I know nothing personally about him myself."

Another witness, a lawyer, in his deposition said: "There were occasions when Mr. Menges' conduct was rather erratic, and certainly different from the rest of us. I recall one time when he threw a drink and smashed the glass in the corner. Another time when he decided it would be funny to pour a drink into the radio and pulled the wires out; and another time when no one knew where he was for a while and finally found him peeking in the windows at his home."

Another witness who lived in Delaware said that his reputation for good order and morality was not very good. ▉ Both of the children prefer to remain with their grandparents. The wishes of children are to be considered, but they are not conclusive. *Markley* v. *Markley*, 145 Va. 596, 134 S. E. 536; 39 Am. Jur. 609.

The wife's bill for divorce, which went into her husband's short-comings in some detail and is certainly not reticent in its charges, charges him neither with drunkenness nor with immorality.

We have seen that one witness said that his reputation for sobriety and morality was bad. It is not to be pre-

sumed that a company like DuPont would keep on its permanent technical staff, year after year, such a man. Among the people who should and do keep sober are technical chemical experts.

He is charged with instability. To support this we are told that he owned no home but was a tenant in divers places.

The only evidence of drunkenness that we have is that he went to his club and to cocktail parties and drank martinis. All that was seen in his conduct relied upon to support the charge of immorality is that once in dancing at a club he held his partner unnecessarily close. Again, it is said that he frequently took a neighbor's wife to her home in the nighttime. Usually her husband was there when they arrived.

Mr. Menges was a man of social instincts and particularly at his club sought out attractive young women. His wife's health was bad, and it is possible that she resented all of this. If it be conceded that at sometime some dignity was wanting in his demeanor, that is not enough.

The presiding judge thought that Mr. Menges "is a fit and proper person to have the care, custody and control of said children." That finding we sustain, for two reasons: (1) Because of the rule of law which gives weight to his judgment; and (2) because independent of that rule of law, it is sustained in this record by the weight of evidence. In it we find no error, and so it must be affirmed.

*Affirmed.*