# Staunton

## THOMAS H. WILLIAMS AND VIRGINIA WILLIAMS v. LESSIE G. WILLIAMS AND SARAH WILLIAMS.

September 5, 1951.

Record No. 3811.

Present, Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*John Y. Hutcheson,* for the plaintiffs in error.

*Y. M. Hodges,* for the defendants in error.

*Smith, J.,* delivered the opinion of the court.

This action commenced with a petition for a writ of *habeas corpus* by Lessie G. Williams and Sarah Williams, his wife, appellees, against Thomas H. Williams and Virginia Williams, his wife, appellants, for custody of Lessie G. Williams, Jr., the infant child of appellees.

For convenience, Thomas H. Williams, the grandfather, and Virginia Williams, the step-grandmother, will be referred to as "grandparents", Lessie G. Williams and Sarah Willams, appellees, as "parents", and Lessie G. Williams, Jr., the infant child, as "Junior".

All of the evidence was heard by the court without the intervention of a jury. After hearing the witnesses, the court reached the conclusion stated in its judgment in the following language:

" * * * the court having heard the evidence of the parties, and argument of counsel, is of opinion that the petitioners are worthy and proper parents to have custody of said infant child; that they are morally capable of properly rearing and training him; that his best interests warrant that his custody be restored to his father and mother, the petitioners, doth so find, and it is Ordered that Thomas H. Williams and Virginia Williams do forthwith deliver up the custody of Leslie G. Williams, Jr., to Leslie G. Williams and Sarah W. Williams, his parents, and that Thomas H. Williams do pay the taxable costs of this proceeding."

The errors assigned are, that the court erred, first, in awarding the custody of the infant, Lessie G. Williams, Jr., to Lessie G. Williams and Sarah Williams, and, second, in refusing to permit the infant child to testify.

The first assignment raises three questions: (1) the judgment of the court is not supported by the evidence in that it shows the mother abandoned and relinquished the right to custody; (2) the mother is not a fit and proper person for custody; and (3) the case was decided on a misapprehension and misapplication of the law. The second assignment raises a single issue.

The grandfather, a negro, residing in Mecklenburg county, is an intelligent and prosperous farmer, 65 years of age, and the owner of a farm of about three hundred acres, valued at approximately twenty-five thousand dollars. He has been married four times and reared nine children, all of whom are married and maintain their own homes. There are no children by his present wife, who is forty-nine years of age. The father of the infant is a farmer. He lived in the home of his father and worked on the farm until his marriage to Sarah Wilson in 1944 and continued to live and work there until February, 1948, during which time three children were born. When Junior, the oldest

child, was about one year of age, the second child was born, and a third child about a year later. Junior was a sickly child, suffering from eczema, and when seven months old was moved into the bedroom of his grandparents at the suggestion of the step-grandmother, to be nursed by her. In February, 1948, the parents moved into a new dwelling house built on thirty acres of land given to the father by the grandfather. On the first night the house was occupied by the husband, the wife and the two younger children it was totally destroyed by fire and the occupants lost all of their household possessions. The father suffered severe burns which necessitated his being confined in a hospital for six months and to make numerous return visits thereafter for care and treatment. As a result of these injuries he was prevented from performing his duties on his farm for approximately eighteen months, but was able to do light work about the house. While her husband was confined in the hospital, the wife spent part of the time at her parents' home, accompanied by the two younger children. The husband, after his discharge from the hospital, lived with his parents and visited his family from time to time at his wife's parents.

Junior remained in the home of the grandparents until July 4, 1948. On this date the husband was at his father's home from the hospital for a brief visit in company with his wife and children when, through the fault of the grandfather, a heated and bitter quarrel arose between the grandfather and Sarah Williams, which is described as the cause of these proceedings. As a result of this quarrel, the wife was told to get out. She left the home and took with her all three of her children and returned to the home of her parents at South Hill in Mecklenburg county. Four days later the grandparents came to the home of the maternal grandparents and begged and pleaded with the mother to permit Junior to go with them to their home. Without attempting to describe the occurrence in detail, the grandparents expressed to the mother their love and affection for the child and their loneliness resulting from his absence. The wife consented to their request and they returned with Junior to their home where he has since remained. Later in the year the grandfather and one of his sons purchased a farm and the grandfather requested Lessie G. Williams to move out of his home and into the tenant house on that farm, which he did. The wife remained at her parents' home and refused to live in this house on the prop-

erty of the grandfather. In the fall of 1949, the husband rented a suitable home for his family. In the latter part of that year the parents requested the grandparents to deliver Junior to them, but their request was ignored. After two additional requests and refusals this action was commenced in January, 1950.

The grandparents and the parents bear excellent reputations. All of the evidence shows the father to be a fit, proper and suitable person to have custody of the child. Unfitness is not charged to the husband but to the wife. The only testimony that casts a shadow on the fitness of the mother is that she left the baby with the father for a long period and is, therefore, unfit to rear Junior. Her reply is that her husband occupied a home owned by the grandfather and since she had been ordered to leave the grandparents' home, she did not care to return to her husband and live in a house owned by the grandfather, but that she returned to her husband and two children as soon as a home, not owned by the grandfather, was provided and has lived at that home with her family ever since.

The instant case is, in many respects, similar to and, in our opinion, is controlled by *Sutton* v. *Menges,* 186 Va. 805, 44 S. E. (2d) 414.

All questions of fact were submitted to the court and all conflicts resolved in favor of the parents. The finding of the judge upon credibility of the witnesses and the weight to be given to their testimony stands on the same basis as the verdict of a jury. The judgment of the trial court is presumed to be correct. The burden is on him who assails it to show that it is wrong. *Sutton* v. *Menges, supra.*

The rights of the parent being founded on nature are respected unless they have been abandoned or relinquished. 14 Michie's Jurisprudence, Parent and Child, § 7.

Ordinarily, the rights of parents to the custody of their children are greater than and favored over grandparents. *Sutton* v. *Menges, supra; Davis* v. *Davis,* 187 Va. 63, 45 S. E. (2d) 918. See *Mullen* v. *Mullen,* 188 Va. 259, 49 S. E. (2d) 349; *Surber* v. *Bridges,* 159 Va. 329, 165 S. E. 508; *Fleshood* v. *Fleshood,* 144 Va. 767, 130 S. E. 648; *Wyatt* v. *Gleason,* 117 Va. 196, 83 S .E. 1069; *Stringfellow* v. *Somerville,* 95 Va. 701, 29 S. E. 685, 40 L. R. A. 623.

In *Surber* v. *Bridges, supra,* quoting from the authorities cited, it was said: "* * * 'If a good and suitable home is ready

and offered by one attached by the ties of nature to the child, those ties can neither be destroyed nor severed because someone better situated is able to offer more.' ''.

To separate a child from its parents the evidence must be cogent and convincing. *Sutton* v. *Menges, supra*. See also Michie's Digest, Va. & W. Va., vol 7, p. 878.

It has often been said that the welfare or interest of the child is a paramount consideration in determining the question of custody. This is a general rule and is to be applied subject to a condition. The condition is the right of fit parents with a suitable home, who have not forfeited their rights, to keep with them their child. In *Surber* v. *Bridges, supra,* at page 335, we said: ''If it be said that the interest of the child is the test, then the law in such case, and where there has been no voluntary surrender, conclusively presumes that its interest will be subserved by its parent's loving care.''

The grandparents contend that the mother abandoned and relinquished custody of Junior to them and that the husband acquiesced.

Parents can, by fair agreement, relinquish custody of their children. *Stringfellow* v. *Somerville, supra; Fleshood* v. *Fleshood, supra; Wyatt* v. *Gleason, supra, Burton* v. *Russell,* 190 Va. 339, 57 S. E. (2d) 95. See also Michie's Digest, Va. & W. Va., Parent and Child, § 10, vol. 7, p. 882. But the burden of proof is on the grandparents to show that the child has been voluntarily given to them.

The grandparents and parents, at the birth of the child, lived in the same home, and the child was taken into the bedroom of the grandparents with the consent of the parents where he continued to live and sleep until July, 1948, when the mother took him from the grandparents' home to her parents' home. The court had the right to find that, when the grandparents went to the mother at her parents' home and asked her permission to take the child, by their act they recognized the right of the mother to custody. In addition, there is testimony that the grandfather said to the mother: ''Wait until he gets a little older. We are not trying to take the child away from you. All we want to do is make it comfortable for him while he is small.'' Both parents testified that at no time had they ever said or done anything that might be construed as consenting to a relinquishment of their right.

■ No inflexible rule can be laid down by which fitness may be determined. Each case must be decided on the particular facts. The character and habits of the person seeking custody must be shown to be such that provision for the child's comfort and moral development can be reasonably expected at his hands.

No question of moral fitness of the parents is raised by the evidence. The witnesses both for the appellants and the appellees, who were questioned on this subject testified that both parents were suitable and proper persons.

■ On the question of the wife's failure or refusal to return to the property of the grandparents and there live with her husband and children as showing lack of fitness to rear the child, the judge heard her reasons for not returning to her family under the existing conditions. She went to her husband and family as soon as the husband secured a home not owned by the grandfather. Irrespective of whether she was right or wrong in failing to return because she was ordered away, that alone does not show unfitness to rear her children. Moreover, her husband is before this court fighting for the custody of his child. Certainly, the father, who is conceded to be a suitable and proper custodian, should not be denied the right because his wife was unable to live in peace and harmony with her in-laws.

The last assignment of error is directed to the refusal of the trial court to permit Junior to testify. In *Carpenter* v. *Commonwealth,* 186 Va. 851, 44 S. E. (2d) 419, we held that the question of competency is left to the discretion of the trial court and that its judgment will not be reversed except for manifest error. See also *Rogers* v. *Commonwealth,* 132 Va. 771, 111 S. E. 231, where Judge Burks reviews many cases. See also Michie's Digest, Va. & W. Va., Witnesses, § 15, vol. 9, p. 1180, and Perm. Sup.

■ Junior was in the courtroom with the grandparents. If he had been permitted to testify and had testified that he wished to remain with his grandparents, the result would have been the same. The wish of an infant is entitled to be considered, but it is not conclusive, especially in a case of a child of such tender years as the age of five. *Sutton* v. *Menges, supra.*

The trial court did not abuse its discretion in finding the facts, and applied the proper law. Its judgment is sustained by the weight of the evidence and is, therefore,

*Affirmed.*