# Richmond

RAYMOND SMITH JUDD v. LOUISE K. VAN HORN.

May 3, 1954.

Record No. 4182.

Present, Hudgins, C.J., and Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Kermit V. Rooke, Robert Lewis Young* and *Bremner & Young,* for the appellant.

*Thomas C. Gordon, Jr.* and *McGuire, Eggleston, Bocock & Woods,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

In a divorce proceeding in the lower court under the style of Katharine Van Horn Judd versus Raymond Smith Judd, Mrs. Judd was, by decree dated April 26, 1950, granted a divorce and the custody of their infant son, Robert William Judd. On April 9, 1952, after the sudden death of Mrs. Judd, appellant, Raymond Smith Judd, filed a petition in the divorce proceeding praying that he be awarded the custody of his son who was then four years of age. Notice of the filing of the petition was duly served upon appellee, Louise K. Van Horn, the child's maternal grandmother, who, at the time, had temporary custody by virtue of an order entered on June 8, 1951, following the death of the mother on June 1, 1951.

The taking of depositions was concluded on July 19, 1952, and on January 29, 1953, the lower court notified counsel of its decision to deny the prayer of the petition, leaving in effect the order awarding temporary custody of the child to appellee. Upon learning of the indicated decision, on March 3, 1953, counsel for appellant filed a petition to dismiss on the ground that the court had no jurisdiction to determine the custody in the "concluded divorce proceeding". The issue thus presented was argued on April 2, 1953, and the court entered the decree overruling the motion to dismiss and awarded custody of the child to Mrs. Van Horn. From these rulings we granted an appeal.

The first assignment of error presents this question for decision: Where one of the parties to a divorce proceeding has died, may a controversy between the surviving parent and a third party over the custody of a child of the marriage be litigated in the divorce proceeding? We think it must be answered affirmatively.

Appellant challenged the jurisdiction of the court on the

ground that the Act of the General Assembly, approved April 5, 1950, entitled "An Act to Provide a State-Wide System of Juvenile and Domestic Relations Courts", etc., Acts of 1950, Chapter 383, page 665 (now § 16-172.1 ff., 1952 Cum. Supp., Code of 1950) provides in § 21 thereof (now § 16-172.23, 1952 Cum. Supp., Code of 1950), that the judge of the Juvenile Court within the boundaries of the county in which he sits shall have exclusive original jurisdiction over proceedings involving the custody of children. Section 24 of the Act above referred to (now § 16-172.26, 1952 Cum. Supp., Code of 1950) also contains *inter alia*, the following: "* * * (P)rovided that when a court of record shall have taken jurisdiction thereof the Juvenile and Domestic Relations Court shall be divested of such jurisdiction." In conformity with this proviso, we held in *Morris* v. *Henry*, 193 Va. 631, 642, 70 S. E. (2d) 417, 423, that section 20-108, Virginia Code, 1950, and other sections cited, give courts of equity ample authority to deal with matters of custody and support if one or both of the parties to the divorce suit should die. See also *Jarrett* v. *Jarrett*, 415 Ill. 126, 112 N. E. (2d) 694. Therefore, this assignment is without merit.

We now consider the second assignment of error which is the decisive point in the case: Is the father of a child of tender years whose custody was awarded to the mother in a divorce suit entitled to the custody of his child upon the death of the mother unless it be affirmatively shown that he is morally unfit or financially incapable of providing a suitable home for the child?

Raymond Smith Judd and Katharine Van Horn were married in Sandston, Henrico County, Virginia, on June 1, 1946. At the time of the marriage the husband was employed in New York City at a salary of $3,500 per year. Their home was located in Nutley, New Jersey, where their son, Robert William Judd, was born on September 24, 1947. Soon thereafter differences arose between the parties, whereupon, on December 29, 1947, Mrs. Judd returned to the home of her parents in Virginia, taking the baby with her.

In January, 1950, Mrs. Judd filed her suit for divorce previously referred to, charging constructive desertion. On March 31, 1950, a settlement was consummated whereby appellant agreed to pay $30 per month for the support of his son, reserving the right to visit him. By decree entered on April 26, 1950, the court below granted the divorce and awarded the custody of the infant to the mother, the issue not being contested in the proceeding.

On June 1, 1951, appellant's divorced wife died suddenly. He immediately wired condolences to her parents and on June 8, 1951, wrote her mother, the appellee, Louise K. Van Horn, that in view of the tragically altered circumstances he would like to come to Sandston to discuss plans for his son's future. On June 12, 1951, Mrs. Van Horn replied by letter as follows: "Dear Ray: Your check, dated June 16th received and shall be used for Bob. I shall be pleased to talk with you regarding Bob's future, on Saturday, June 17th. Bob is fine and the court has awarded me temporary custody of him. Sincerely, Louise K. Van Horn."

This letter was appellant's first intimation that Mrs. Van Horn had taken steps to obtain custody of his son. The record discloses that Mrs. Van Horn employed an attorney on the day of her daughter's death for the purpose of obtaining custody of the child. The petition was filed on behalf of Mrs. Van Horn on June 8, 1951, without notice to appellant, and the order was entered on the same date awarding temporary custody to her. The validity of this order need not be considered, it being immaterial to the present controversy.

Pursuant to the appointment, appellant came to Sandston on June 17th and discussed with Mrs. Van Horn the matter of his son's custody. He expressed the desire to take the child to New Jersey as soon as he could establish a home for him. Mrs. Van Horn would not agree to appellant taking the child and he was forced to employ counsel in an effort to gain custody of his son, the proceeding being instituted as aforesaid by the filing of appellant's petition seeking relief.

There was no attempt on the part of appellant to show that

Mrs. Van Horn was an unsuitable person to care for the child. Mrs. Van Horn and her husband were shown to be people of excellent character, owning their home and being in comfortable circumstances. They were shown to be presently well capable of caring for and supporting their grandson. It was established that Mrs. Van Horn was approximately sixty three years of age and that her husband was in his sixty seventh year; that he was employed by the Commonwealth of Virginia and would be retired when he became seventy years old.

Robert William Judd had lived in the Van Horn home with his mother and grandparents since the inception of the divorce suit. He had been under his mother's care until her death, at which time he was four years of age, and since Mrs. Judd's death he had been under the care of his maternal grandparents.

Admittedly, there was no blot placed upon the character of appellant in the uncontested divorce suit and no proof has been introduced in this proceeding to show that he is not a suitable person to have the care and custody of his son.

Dr. Sarah Jones, a longtime friend of the Van Horns, testified that she had attended the child occasionally when he needed medical care. Dr. Jones' testimony indicated that the child was a normal, healthy boy. Speaking of the attention given the child by the appellee, Dr. Jones said, "I think Mrs. Van Horn does as good a job as any mother of a child five years of age * * *." She, however, expressed concern over the removal of the child from the home of its grandparents to the home of its father, "* * * even though as you say it be a loving home waiting for him, it would be a shock to the child to be disrupted from his normal every-day life, and I think it takes a great deal of intelligence and training for a home in which he would go to compensate for the love and affection that he has already known and seems to be his natural home."

Ben V. Van Horn, husband of appellee, testified regarding appellant's character: "Well, personally, I like Ray all right.

He is better than the average sort of a fellow. Being a man, I can understand men. We probably think something alike, but I would say Ray is very selfish and self-centered and has no consideration for other people except when it is of benefit to himself. There are a lot of people like that, you know, and I think that is really what has been his difficulty all the time. I think I have told him a little something about it in our many conversations."

The evidence of Dr. Jones and that of the maternal grandfather indicates the general character of evidence offered by appellee either in an attempt to show appellant's unfitness to have the care and custody of his child or to show that it would be to the best interests of the child to leave it with the maternal grandmother. Such evidence is both modest and dignified. It is offered on behalf of Mrs. Van Horn whose love for this little boy cannot be doubted. Her love for her deceased daughter's child under the related circumstances is both natural and understandable.

However, there has been no showing that the father is not a suitable person to have the care and custody of his son, a right which is ordinarily his both by nature and by law. The record discloses that after the entry of the divorce decree appellant exercised his right to visit his son periodically and has continued to manifest a fatherly interest in him. Appellant is approximately forty years of age, and if he does his duty by his son, as we must presume he will, he will provide him with a father-and-son companionship which would otherwise be denied. Appellant has held his present position as assistant advertising manager of an important firm for the past four years. He earns $6,200 per year and lives in a comfortable apartment in Nutley, New Jersey, accessible to playgrounds and schools. He has remarried, his present wife being approximately thirty years of age. Appellant testified that his wife is both willing and anxious to care for his child and to give him such love as she is capable of bestowing upon him.

In Virginia the parents of unmarried minor children are

declared to be their natural guardians, "* * * and upon the death of either parent the survivor shall be the natural guardian of the person of such child. * * *". § 31-1, Virginia Code, 1950. Under the circumstances of the instant case the fact that Katharine Van Horn Judd had been awarded the custody of her child in the uncontested divorce suit is of little importance. Upon her death the father became the natural guardian of his son. In 67 C. J. S., Parent and Child, § 11(2), p. 637, it is said:

"By the common law, and under the express provisions of some statutes, where one parent is dead, the surviving parent, either father or mother, if competent and fit, and it is in keeping with the welfare of the children, has the right to the custody and control of the minor children, and such rule applies on the death of the parent to whom the minor children's custody was committed in a divorce action, * * *. The surviving parent's rights in this respect should never be denied, or interfered with, except for the most cogent reasons, and, if the surviving parent is a fit person, he is entitled to the custody of the child, * * *".

The provision for custody of children contained in a divorce decree is not final but is subject to change "* * * on petition of either of the parents, * * * which petition shall set forth the reasons for the relief sought * * *". § 20-108, Virginia Code, 1950. Such divorce decree is not an adjudication that the parent not receiving the custody of the child is an unfit person to have its custody and does not amount to a severance of the parent and child relationship. Thus in 74 A. L. R. 1353 the rule is stated:

"The prevailing rule clearly is, that, upon the death of the parent who has held custody under a divorce decree, the right to custody automatically inures to the surviving parent."

In 128 A. L. R. 990, it is said: "It is a general rule that where the custody of children is granted to their mother by a decree of divorce, such custody does not forever cut off and bar the father's right to their custody so long as the decree is unmodified, but only establishes the right of custody

between the two spouses during their lives, and that upon the death of the mother her right does not descend nor can it be transmitted, but that the right of the father to the custody of the children is revived, provided, of course, he is a person suitable for the custody of the children."

The text authorities on this subject are in agreement. Keezer, Marriage and Divorce, 3rd ed., sec. 725, p. 766; Nelson on Divorce, Vol. 2, 2nd ed., sec. 15.24, pp. 204-206; Schouler Divorce Manual, sec. 316, pp. 430, 471; Schouler, Marriage, Divorce, Separation and Domestic Relations, Vol. 2, 6th ed., sec. 1904, p. 2049; 17 Am. Jur., Divorce and Separation, § 689, p. 524.

In the case of *Hayes* v. *Strauss*, 151 Va. 136, 141, 144 S. E. 432, we held that the rights of a natural father of a bastard child were superior to the maternal grandparents upon the death of the child's mother. Justice Holt there quoted with approval from 7 C. J. 955: "On the death of the mother the father has the right to the custody and control of the child, provided he is able to take care of and support it."

In *Sutton* v. *Menges*, 186 Va. 805, 809, 810, 44 S. E. (2d) 414, 417, Justice Holt, speaking for the court, said: "This is not a contest between husband and wife; the wife is dead. Grandparents, as such, do not stand *in loco parentis*. *Wilson* v. *Mitchell*, 48 Colo. 454, 111 P. 21, 30 L. R. A. (N. S.) 507.

"To separate a child from its parents, the evidence of their unfitness must be cogent and convincing. *Pierce* v. *Jeffries*, 103 W. Va. 410, 137 S. E. 651, 51 A. L. R. 1502; 39 Am. Jur. 597.

"Indeed, the common law right of a father to keep with him his legitimate children, when the mother is dead, is not questioned."

The general rule that the welfare or interest of the child is of paramount consideration in determining the question of custody has its most accepted application in the settlement of the rival claims of parents and is subject to the condition that a fit parent with a suitable home has a right to

the custody of his child superior to the rights of others. Here the law presumes that the child's best interests will be served when in the custody of its parent. *Surber* v. *Bridges*, 159 Va. 329, 165 S. E. 508; Michie's Digest, Va. and West Va., Parent and Child, Vol. 7, p. 878.

The burden of showing the existence of circumstances which would deprive the father of the right to custody of his son is upon the parties opposing this right. 67 C. J. S., Parent and Child, § 13(f)(1), p. 673. And such evidence of unfitness must be cogent and convincing. *Williams* v. *Williams*, 192 Va. 787, 66 S. E. (2d) 500; *Sutton* v. *Menges, supra.*

The record before us is devoid of proof showing that appellant is an unsuitable person to have the care and custody of his son.

For the reasons expressed the decree of the trial court is reversed and the cause remanded with direction that a decree be entered awarding the custody of Robert William Judd to his father, Raymond Smith Judd.

*Reversed and remanded.*