**Richmond**

NINA SUE PATRICK

V.

LINDA LOU BYERLEY

Record No. 831852.

January 18, 1985.

Present: All the Justices.

*Matthew J. Cody, Jr.*, for appellant.
*Ford C. Quilen; Suzanne K. Fulton; Randall A. Eads*, for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This is a child custody dispute between the child's natural mother, Nina Sue Patrick, and his former stepmother, Linda Lou Byerley. The trial court awarded Byerley custody of the child, Christian Lee Alexander (Chris), after finding, *inter alia*, that Patrick voluntarily abandoned her son and that it is in his best interest that Byerley be awarded his custody. The question presented in this appeal is whether the evidence supports these findings.

Because Byerley prevailed at trial, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to her. Chris was born February 19, 1975, to Joseph and Nina Sue Alexander (now Patrick). The family lived in Memphis, Tennessee. When Chris was approximately four and one-half months old, his mother left him and a child by a previous marriage and began living with Tommy Patrick, a married man.

Following the separation, Alexander and the children continued to live in the marital home. Alexander later moved to Holly Springs, Mississippi, a short distance from Memphis. There, he lived with his mother who helped care for Chris. Patrick visited Chris sporadically during this period, but she never had or sought his custody thereafter.

In December, 1975, Patrick and Alexander were divorced, and a Tennessee court awarded Alexander custody of Chris. Shortly thereafter, Alexander and Chris moved to Arizona and then to other parts of the country. Chris' mother married Tommy Patrick in 1976.

In 1980, Chris and his father settled in Kingsport, Tennessee. Alexander became acquainted with Byerley, who began taking care of Chris. She assumed the role of a devoted mother to Chris.

Alexander and Byerley were married in April, 1981. They lived with Chris on the Byerley farm in Russell County, Virginia, near Byerley's parents.

Alexander's work required him to be away much of the time, and, while he was away, Chris remained at home with Byerley. Byerley attended to Chris' needs, and the two became very fond of each other. A mutual feeling of love and affection also developed between Chris and Byerley's parents, whom he came to regard as grandparents.

Byerley and Alexander separated in June, 1982, and he and Chris moved to Lenoir City, Tennessee. The couple was divorced in August, 1982. Byerley maintained constant contact with Chris

through letters, telephone calls, and weekend visits. She periodically brought Chris back to her Russell County home for visits. It was during one of these visits that Alexander failed to return for Chris, and Alexander's whereabouts remain unknown.

Although his father's abandonment greatly depressed Chris, under Byerley's loving care, he soon adjusted. Byerley reassumed the responsibility of rearing Chris as if he were her own child. She was a woman of good reputation and character who gave Chris a parental stability he had not experienced previously. Byerley and Chris participated in numerous church activities together, and she also was active in school-related and recreational activities on his behalf. Chris' school teacher testified that he was a bright child, who performed well academically. Byerley maintained a comfortable home, and Chris enjoyed life on the farm.

When Patrick's custody suit was initiated, Chris became upset at the thought of leaving Byerley; he felt insecure and began having nightmares. Chris told the court that he loved Byerley very much and preferred to remain with her.

A psychiatrist testified that Chris had no real memory of Patrick and that his reaction to her "seemed to be somewhat extreme." The psychiatrist also opined that Byerley was warm and loving and afforded Chris a stable home.

It is well established that a child's welfare is the court's "primary, paramount, and controlling consideration . . . in all controversies between parents over the custody of their minor children." *Mullen v. Mullen*, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948). This general rule, however, is subject to the exception that "a fit parent with a suitable home has a right to the custody of his child superior to the rights of others," in which case "the law presumes that the child's best interests will be served when in the custody of its parent." *Judd v. Van Horn*, 195 Va. 988, 995-96, 81 S.E.2d 432, 436 (1954). Moreover, the opposing party has the burden of showing circumstances which would justify depriving a parent of the custody of his child, *id.*, and proof of either voluntary relinquishment of the right to custody or unfitness of the parent must be clear, cogent, and convincing. *Shortridge v. Deel*, 224 Va. 589, 592, 299 S.E.2d 500, 502 (1983); *Szemler v. Clements*, 214 Va. 639, 644, 202 S.E.2d 880, 884 (1974).

Abandonment of a child without justification establishes parental unfitness. When abandonment exists in a custody dispute

between a parent and another, the general rule becomes operative, and the child's welfare is the dominant and controlling factor.

In the present case, the court found "by clear, cogent, and convincing evidence" that Patrick "voluntarily abandoned" Chris when he was approximately four and one-half months old. We conclude that the evidence, when viewed in the light most favorable to Byerley, supports this finding. As previously noted, Patrick left Chris to live with Tommy Patrick. Thereafter, she saw Chris infrequently for a time, but never again had his custody and made no effort to obtain it. She became a total stranger to her son. Proof of abandonment, therefore, rebutted the *Judd* presumption favoring Patrick.

The court also found that "the best interests of [Chris] would be served by [his] remaining in the care and custody of . . . Byerley." In so finding, the court noted that for the last three and one-half years Byerley had cared for Chris "as a member of her own family," and that "the Byerley home is the only stable home environment [Chris] has ever experienced." The court also recognized Chris' preference to remain in Byerley's home.

We conclude that this finding is also amply supported by the evidence. The relationship between Byerley and Chris is one of mutual devotion in a wholesome environment. Clearly, to divest Byerley of custody after caring for Chris for nearly five years would be highly disruptive to Chris and not in his best interest. Moreover, it is Chris' strong desire that he remain in the custody of Byerley, and, although his wishes are not controlling, the court properly considered his preference and gave weight to it. *Hall* v. *Hall*, 210 Va. 668, 672, 173 S.E.2d 865, 868 (1970); *Hepler* v. *Hepler*, 195 Va. 611, 620, 79 S.E.2d 652, 658 (1954).

Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*