## CIRCUIT COURT OF AMHERST COUNTY

In re Custody of
Shamema Honzagool Sloan

October 3, 1991

By JUDGE J. MICHAEL GAMBLE

As you know, this case comes to this Court on appeal from the Juvenile and Domestic Relations District Court of Amherst county. The trial *de novo* was held in this Court on August 20, 1991, and September 25, 1991. At the conclusion of the trial on September 25, 1991, I awarded full legal and physical custody of Shamema to Mr. and Mrs. Charles Roberts. Further, I denied M. Ismail Sloan, the natural father of Shamema, any visitation rights.

This letter will serve as my written opinion to supplement the finding and decision of this court on September 25, 1991. Shamema, now ten years of age, was born in 1981 in the State of New York as the only child of a marriage between M. Ismail Sloan and Honzagool Sloan. A custody dispute eventually arose between Ismail Sloan and Honzagool Sloan over the custody of Shamema. By order dated May 24, 1982, the New York Court divested M. Ismail Sloan of custody of Shamema and awarded custody to Honzagool. The New York Court further ordered that Shamema not be removed from the State of New York unless ordered by the Court. In July, 1982, M. Ismail Sloan, without the permission of the New York Court or Honzagool, took Shamema from a mosque in New York City and brought her to the State of Virginia. Despite efforts by Honzagool and the New York Court, Shamema was never returned to that jurisdiction. Honzagool eventually returned to her native Pakistan and has made no further efforts to regain custodial possession of Shamema since her return to that country. The New York Court never restored custody to M. Ismail Sloan. Eventually,

however, the New York Court relinquished jurisdiction of the custodial matters to the Virginia Courts.

Fairly soon after bringing Shamema to the State of Virginia, Ismail Sloan placed her in the custody of Mr. and Mrs. Charles Roberts. Shamema was less than one year of age at that time. In the beginning, Ismail Sloan paid to Mr. and Mrs. Roberts a fee for "babysitting" and reimbursed out-of-pocket expenses. Later, however, for an approximate two and one-half year period, Ismail Sloan had no contact with Mr. and Mrs. Roberts or Shamema and did not send them any support. As a result, Mr. and Mrs. Roberts developed a parent and child relationship with Shamema and stood *in loco parentis* to her. Ismail Sloan returned to Lynchburg after the two and one-half year absence and instituted custody proceedings in the Amherst County Juvenile and Domestic Relations District Court.

Ismail Sloan did not disclose the location of Shamema to either the New York courts or Honzagool until he returned to Virginia in 1985 and filed a custody petition in the Amherst County Juvenile and Domestic Relations District court. He alleges that he was afraid that the "Black Muslims" would kidnap the child and take her to her mother's home in a remote and backward area of Pakistan. Ismail Sloan filed his custody petition in the Juvenile and Domestic Relations District court of Amherst County in January, 1986, and Honzagool was eventually served with a copy of this process by mail and by publication. On April 2, 1986, the Juvenile and Domestic Relations District Court gave temporary legal custody of Shamema to Ismail Sloan and physical custody to Mr. and Mrs. Charles Roberts. The court further ordered that the child should not be removed from the State of Virginia. By order dated August 25, 1986, the Amherst County Juvenile and Domestic Relations District Court set a final custody hearing for October 8, 1986, and effective September 7, 1986, awarded physical custody of Shamema to Ismail Sloan with visitation allowed to Mr. and Mrs. Charles Roberts. Between August 25, 1986, and September 7, 1986, Ismail Sloan removed the child from the State of Virginia (in violation of the April 2, 1986, order).

For reasons that were never sufficiently explained, Ismail Sloan, prior to September 5, 1986, took Shamema outside of the United States of America, eventually taking

residence in the United Arab Emirates. Mr. Sloan then kept Shamema outside of the jurisdiction of the Virginia Courts until early 1991. Dr. Marjorie Sloan, the mother of Ismail Sloan, was also taken along on this journey. Shamema's travels included trips to many different countries, including a bizarre experience in Bangkok, Thailand, in September, 1990, where her grandmother, Marjorie Sloan, became ill and was removed from a Bangkok hospital by a Thai lawyer and brought back to the State of Virginia. Also, the Thailand courts awarded custody and control of Shamema to the Thailand Department of Public Welfare through the efforts of the same lawyer. Ismail Sloan avoided the Thailand authorities and brought Shamema back to U.A.E. Eventually, his wife, Renuka, contacted Mr. and Mrs. Roberts by telephone, and airline tickets were mailed to them to travel to the United States. Renuka, Shamema, and Jessica (Sloan's child by Renuka) returned to the United States in November, 1990.

On August 27, 1986, after Ismail Sloan had removed Shamema from the State of Virginia, Mr. and Mrs. Roberts filed for custody in their own right by petition in the Amherst County Juvenile and Domestic Relations District Court.

Also, Honzagool, the mother of Shamema, wrote several letters to the Amherst County Juvenile and Domestic Relations Court which are in the Court record, submitting herself to the jurisdiction of that Court. Ismail Sloan appealed this decision to the Amherst County Circuit Court.

The Amherst County Juvenile and Domestic Relations District Court awarded custody of Shamema to Mr. and Mrs. Roberts by order of July 17, 1991, and granted Ismail Sloan visitation supervised by the Department of Social Services.

On September 5, 1991, Shamema Sloan was visiting with Ismail Sloan at his home on Trent's Ferry Road in the City of Lynchburg under the supervision of Rick Groff, caseworker with the Amherst County Department of Social Services pursuant to the order of the Juvenile and Domestic Relations District Court of Amherst County dated July 17, 1991. During such visitation, Ismail Sloan attempted to escape from the supervision of Mr. Groff and again remove Shamema Sloan from the territorial jurisdiction of this Court. Mr. Sloan had rented a Budget rental car (in the name of another person), had in his possession airplane

tickets from Greenville, South Carolina, to Tokyo, Japan. He attempted to remove Shamema from the observation of Mr. Groff through the backyard of the Trent's Ferry Road property. A scuffle occurred between Mr. Groff and Mr. Sloan which resulted in Shamema actually running from Mr. Sloan and locking herself into Mr. Groff's vehicle. The police subsequently apprehended Mr. Sloan and found in his possession the rental contract for the car and the airplane tickets. An abduction charge was filed against Mr. Sloan in the City of Lynchburg where the incident occurred.

Mr. Sloan testified that he believes that he is still married to Honzagool although he has also now married Dayawathie ("Linda"). Also, he has fathered a child by Renuka. At one point in time after he returned to the United States in 1990, both Renuka and Dayawathie (and children) stayed in his mother's home on Trent's Ferry Road in the City of Lynchburg. Additionally, Mr. Sloan's first marriage was to Anda Aravena Sloan. His first wife has custody of these children, and Mr. Sloan has not seen them since 1985. Additionally, a judgment in the amount of $17,550.00 was awarded against him in the State of New York, and later docketed in the State of Virginia, for failure to pay child support on his children by his first marriage.

Mr. Sloan appears to have had children by four different women. His marital status with Dayawathie and Renuka appears unclear.

Ismail Sloan is in a dispute with his brother, who is the committee for his mother in the State of South Carolina, over the possession and ownership of the Trent's Ferry Road property in which he is currently residing. Although Mr. Sloan is a person of high intelligence who claims to have worked in occupations as different as the securities industry and authoring books on Chinese chess (checkers), he does not have any clear source of income or source of employment. Also, he frequently files court cases claiming that he is indigent and requesting a waiver of filing fees. Mr. Sloan has been a party to many cases both in State and Federal Courts in Virginia and elsewhere and seems to be litigious by nature. These suits seem to keep him constantly embroiled in various controversies.

His housekeeping at the Trent's Ferry Road home is very untidy and leaves a great deal to be desired. The photographs taken by Mr. Groff in August, 1991, indicate very poor housekeeping.

Mr. Sloan's credibility as a witness in this case was very poor.

Mr. and Mrs. Roberts demonstrate a great amount of stability. They have raised children of their own who are now adults, and they are both gainfully employed. The lifestyle of Mr. and Mrs. Roberts is a normally middle class lifestyle which appears to revolve around family and church. It is obvious that they have developed a close relationship with Shamema and that she views them as her parents.

The parties agreed to allow the undersigned judge in this case to talk with Shamema privately. In this private discussion, Shamema indicated a clear and certain desire to live with Mr. and Mrs. Roberts and indicated that she did not wish to see Mr. Sloan.

While in the care of Mr. and Mrs. Roberts, Shamema has done very well in Temple Christian School, a private school in Amherst County. Mr. and Mrs. Roberts seem to be sensitive to Shamema remaining in contact with her natural mother, Honzagool, and learning about the cultural heritage of Honzagool.

The general rule of law in custody cases in the Commonwealth of Virginia is that where there is a controversy between a parent and a non-parent, the best interests of the child will be served by granting custody to the natural parent. Further, this presumption can generally only be rebutted by clear and convincing evidence of parental unfitness. *Patrick v. Byerly*, 228 Va. 691, 694, 325 S.E.2d 99, 101 (1985).

In *Bailes v. Sours*, 231 Va. 96, 100, 340 S.E.2d 842 (1986), the Supreme court of Virginia enumerated five different factors which the Court can consider to rebut the parental presumption of fitness for custody. They are as follows:

1. Parental unfitness.
2. Previous divestiture order.
3. Voluntary relinquishment.
4. Abandonment.

5. Special circumstances constituting an extraordinary reason for taking the child from its parents.

The five factors in *Bailes v. Sours* were followed by the Court of Appeals of Virginia in *Smith v. Pond*, 5 Va. App. 161, 163, 360 S.E.2d 885 (1986).

In the instant case, the unfitness of Mr. Sloan has been established under all five factors in *Bailes v. Sours*. His lifestyle, attitude, behavior, instability, living circumstances, personal habits, and emotional status all as outlined in the record make him unfit. Also, he has previously been divested of custody by order of the New York court. He voluntarily relinquished custody of the child to Mr. and Mrs. Roberts when the child was an infant, and he abandoned the child for two and one-half years. Last, the special circumstances in this case cry out for custody to remain with Mr. and Mrs. Roberts. As previously noted, Mr. Sloan has disobeyed court orders in New York or Virginia on three occasions concerning the location of this child. Shamema indicated to the Court privately that she wanted to live with Mr. and Mrs. Roberts and she did not want to see Mr. Sloan. Mr. Sloan may well be married to three women at the present time, and by his own admission, is married to two women. He does not seem to be worried about all of his wives and children residing with him together. Under *Brown v. Brown*, 218 Va. 196, 199-200, 237 S.E.2d 89 (1977), this is clearly an unfit and immoral environment in which to place Shamema.

On the other hand, Mr. and Mrs. Roberts are fit custodians, and the best interests of the child will be served by placing custody of Shamema with Mr. and Mrs. Roberts. Once the presumption of law favoring parental custody is rebutted, the natural parent must prove that it is in the best interests of the child for custody to be granted to him. In this case, the best interests of the child will be served by placing custody with Mr. and Mrs. Roberts. *Shortridge v. Deel*, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983).

Honzagool Sloan has filed various letters and responsive pleadings in this case. She has been represented by an attorney. Therefore, this custodial ruling is also in prejudice to the rights of Honzagool. There are certainly special facts and circumstances in this case that justify this ruling. Honzagool now lives in Pakistan, and Shamema

is a citizen of the United States. Honzagool has not indicated any intent to return to the United States or to make provisions for the transfer of her to Honzagool's custody in Pakistan.

One of the more difficult and unusual aspects of this case concerns visitation. The rights of Honzagool to petition for visitation are reserved for such future time as she may wish to petition for visitation.

This Court denied Ismail Sloan visitation at the present time. The three efforts by Mr. Sloan to remove the child from judicial jurisdiction of the New York and Virginia courts indicates that he cannot be trusted to have any visitation rights with Shamema. In *Eichelberger v. Eichelberger*, 2 Va. App. 409, 412, 345 S.E.2d 10 (1986), the Virginia Court of Appeals stated:

> When conditions are placed on visitation between a non-custodial parent and his child, it should be with the awareness that, except under unusual circumstances, maintaining close ties with non-custodial parent is in the child's best interests.

In the instant case, it is clear that it is not presently in Shamema's best interests to have visitation with Ismail Sloan. Even under supervised conditions, he has attempted to remove her from the jurisdiction of the Court. Accordingly, the Court decides that he shall have no present visitation with Shamema. However, the Court will retain jurisdiction of this matter for a period of time to allow Mr. Sloan to petition in the future for visitation rights. If such petition is made, he must demonstrate to the Court that Shamema will not be removed from the jurisdiction of the Court and that the best interests of Shamema will be served by allowing visitation.

Eventually, this Court will remand all future matters concerning Shamema back to the Juvenile and Domestic Relations District Court of Amherst County.