# CIRCUIT COURT OF THE CITY OF RICHMOND

In re Naila Lyles

November 1, 1999

Case No. HK-1213-A4

BY JUDGE RANDALL G. JOHNSON

This is an appeal of an order of the Juvenile and Domestic Relations District Court of the City of Richmond that awarded custody of Naila Lyles to her paternal grandmother, Abena Nkromah. A trial *de novo* was held on October 20.

Naila will be two years old on November 17. Before she was born and for a while after her birth, her parents, Gina L. Lyles and Rasoul A. Elcock, lived together. They were never married. In the early part of 1998, Lyles left Elcock to live with Lyles' mother. She took Naila with her. In March 1998, Lyles petitioned the juvenile court for custody of Naila. In June 1998, the juvenile court awarded Lyles and Elcock joint custody, with physical custody being awarded to Lyles. The order awarding custody stated that it was by agreement of the parties.

In early February 1999, Lyles telephoned Nkromah and Nkromah's mother, Rosa Elcock, and asked them to pick up Naila and take her to Nkromah's house to live. Nkromah and Ms. Elcock agreed. Lyles testified that she made it clear to Nkromah and Ms. Elcock when she asked them to take Naila that she only intended to leave Naila with Nkromah temporarily. Nkromah and Ms. Elcock testified that nothing was said about how long Nkromah would keep Naila. On February 11, 1999, Nkromah filed a petition with the juvenile court seeking custody. The petition was opposed by Lyles. Elcock did not seek custody himself but asked that custody be awarded to Nkromah. Custody was awarded to Nkromah on June 10. This appeal by Lyles followed. Elcock again does not seek custody and again asks that custody be awarded to Nkromah.

The law in Virginia regarding custody disputes between parents and nonparents, including grandparents, is fairly well settled. In *Mason v. Moon,* 9 Va. App. 217, 385 S.E.2d 242 (1989), the court said:

In all child custody cases, including those between a parent and nonparent, the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute ... . In custody disputes between a natural parent and a nonparent, the law presumes the best interest of the child will be served when in the custody of the natural parent ... . Based on this presumption, the rights of the [natural] parents may not be lightly severed but are to be respected if at all consonant with the best interest of the child. ... To overcome the strong presumption favoring a parent, the nonparent must adduce by clear and convincing evidence that: (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute extraordinary reasons to take the child from the parents.

9 Va. App. at 220 (citations and quotation marks omitted). *See also Bailes v. Sours,* 231 Va. 96, 99, 340 S.E.2d 824 (1986); *Wilkerson v. Wilkerson,* 214 Va. 395, 397, 200 S.E.2d 581 (1973); *Walker v. Brooks,* 203 Va. 417, 421, 124 S.E.2d 195 (1962); *Smith v. Pond,* 5 Va. App. 161, 163, 360 S.E.2d 885 (1987); *Ferris v. Underwood,* 3 Va. App. 25, 28, 348 S.E.2d 18 (1986).

As the *Mason* court also noted, "[w]hen determining whether the nonparent's evidence is sufficient to rebut the presumption in favor of granting custody to a natural parent, the trial court must consider all the evidence before it." *Id. See also Venable v. Venable,* 2 Va. App. 178, 186, 342 S.E.2d 646 (1986). After considering all the evidence before it in this case, the court finds that Nkromah has failed to rebut the presumption in favor of granting custody to Lyles.

Two of the factors set out in *Mason* can be dealt with fairly quickly. First, there is no evidence that Lyles ever abandoned Naila. While it is Nkromah's position that Lyles relinquished custody to her, relinquishment of custody alone does not constitute abandonment. Indeed, the fact that abandonment and relinquishment of custody are listed as separate factors is a clear indication that the evidence required to prove abandonment is different from the evidence required to prove relinquishment of custody. For example, in *Patrick v. Byerley,* 228 Va. 691, 325 S.E.2d 99 (1985), a finding of abandonment was affirmed where a mother left her husband and son to live with another man,

visited the son "infrequently for a time" but never again had his custody "and made no effort to obtain it." 228 Va. at 695. In fact, the mother "became a total stranger to her son." *Id.* By contrast, the evidence in this case is that even after she asked Nkromah to keep Naila, Lyles continued to visit her and buy toys and other items for her. In addition, she opposed from the beginning Nkromah's petition to obtain custody, that petition coming just days after Nkromah was asked to keep Naila. In *Patrick*, the mother's suit to obtain custody was filed approximately seven years after she had left her son.[1] In sum, there is simply no evidence that Lyles "became a stranger to" Naila or otherwise abandoned her. The presumption in favor of Lyles is not overcome by this factor.

The presumption in favor of Lyles is also not overcome by a previous court order divesting her of custody. Lyles was awarded physical custody in June 1998, and the order awarding custody to Nkromah is the subject of this *de novo* appeal. It is not a factor in this case.

The other three factors are more involved. Still, the presumption is not rebutted. With regard to Nkromah's argument that Lyles voluntarily relinquished custody to her, the evidence is conflicting. Lyles testified that she told Nkromah and Ms. Elcock when she asked Nkromah to take Naila that it was only temporary and that she would take Naila back when she had a more stable home and work environment. Nkromah and Ms. Elcock testified that nothing was said about how long Nkromah would keep Naila. Either way, the presumption stands.

In order for there to be a relinquishment of custody sufficient to rebut the presumption in favor of the natural parent, there must be an intent to make the relinquishment permanent. Sending a child to Grandma and Grandpa's for the summer or enrolling him or her in summer camp does not constitute the relinquishment of custody contemplated by *Mason* and the other relevant cases. If Lyles' testimony is believed, she specifically told Nkromah and Ms. Elcock that she was only leaving Naila with Nkromah temporarily. But even if *nothing* was said about how long Naila would stay with Nkromah, as Nkromah and Ms. Elcock testified, that is not clear and convincing evidence that Lyles intended to relinquish custody permanently. Lyles, Nkromah, Rasoul Elcock, and Rosa Elcock all testified about the reasons Lyles asked Nkromah to keep Naila. According to Lyles, it was because her mother, with whom she and Naila were living but with whom she did not get along, had

---

[1] Actually, the *Patrick* court did not specify when the custody action was filed. A reading of the opinion, however, suggests that it was filed sometime after June 1982. The mother had left her son in June or July 1975.

asked her to leave her house and she wanted Nkromah to take care of Naila while she looked for a job and a new place to live. Although she still does not have a house or apartment of her own, she now has a job and she and her mother are getting along better and are again living together.

According to Nkromah, Rasoul Elcock, and Rosa Elcock, the reason given by Lyles was only one reason she asked Nkromah to keep Naila. The other reason involved a shooting that occurred behind Lyles' mother's house that made Lyles afraid for Naila's safety. Even if Nkromah, Rasoul Elcock, and Rosa Elcock are correct, the court finds it hard to believe that Lyles or Nkromah thought that it would be necessary for Nkromah to have permanent custody. In fact, Nkromah testified that it is still her hope that Lyles will eventually "get her life together," or words to that effect, and be able to regain custody of Naila. That does not sound like a person who thought she was assuming custody permanently. Moreover, the fact that Lyles has been fighting Nkromah's petition for custody from the time it was filed — and it was filed just days after Nkromah was asked to keep Naila — is strong evidence that it was not Lyles' intention to relinquish custody permanently. The cases require that relinquishment be shown by clear and convincing evidence. It has not been shown here.

The court also does not find, by clear and convincing evidence, that Lyles is an unfit parent. The evidence shows that Lyles does have a great deal of anger within her, and that she often directs that anger at Rasoul Elcock. There was also evidence that Lyles has given Naila toys and other items that Nkromah and Ms. Elcock feel are not age-appropriate, and perhaps even dangerous, for Naila. The court finds, however, that while Lyles does have a serious problem with her temper, particularly in her interactions with Rasoul Elcock, she has never shown anger or acted inappropriately toward Naila. The court also finds that the items she bought for Naila, which included a "baby's" pocketbook with a nail file in it, earrings with sharp posts, and toys with sharp points, may not have been the best things to give to Naila at her young age. The court does not find, however, that giving them to Naila makes Lyles unfit. First, Lyles conceded in court that some of the items she gave to Naila were not appropriate. Although that concession came during a hearing being held to determine whether she will be deprived of custody, the court believes that she was sincere and that she now realizes that young children such as Naila must be zealously protected from dangerous toys and other items. In addition, the court has seen many toddlers with toys some people feel are dangerous or not age-appropriate. The court also knows that many girls — and some boys — Naila's age wear earrings with sharp posts. More has to be shown to classify their parents as unfit.

There was also testimony that Lyles takes Naila to a house "down the street" where "a lot of men drink and play cards." There was no evidence, however, about how many times this has happened, why it happened, who the men are, what they drink, what kind of cards they play, how long Lyles and Naila stayed, or anything else that proves by clear and convincing evidence that Lyles is unfit. Again, the presumption in favor of the natural parent is a strong one, and it takes more than general allegations to rebut it.

The court also heard testimony raising serious questions about Lyles' employment. When asked about her employment, Lyles gave conflicting answers. She also did not seem to be too certain about her work schedule. Still, her testimony, although suspect, is not sufficient to find, by clear and convincing evidence, that she is unfit. If the issue were whether she or someone else is the more appropriate custodian, the answer might be different. The issue, though, is whether Lyles is legally unfit. The court holds that she is not.

The final factor that can rebut the presumption in favor of the natural parent involves "special facts and circumstances [that] constitute extraordinary reasons to take the child from the parents." The only evidence that comes close to satisfying this factor involves the shooting previously referred to. According to the testimony, a person was shot and killed behind Lyles' mother's house. According to Lyles, she was afraid for her safety for a while but not for Naila's. Also according to Lyles, she is no longer afraid, her mother has moved, and it is now perfectly safe for Naila and her to live with her mother, which is what she has planned until she can afford her own apartment. The court believes Lyles' testimony and finds that the shooting does not constitute an "extraordinary reason" to take Naila from her mother. And since the court is aware of no other reasons that can even remotely be classified as "extraordinary," Nkromah's petition for custody must be denied.