Tuesday                    13th

May, 2008.

Joseph C. Florio,                                                                          Appellant,

 against            Record No. 2424-06-1
                    Circuit Court Nos. CH02000025-01 through CH02000027-01

Barbara E. Clark, William B. Clark
 and Joyce Childers,                                                                      Appellees.


Upon a Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey,
McClanahan, Haley, Petty, Beales and Millette

Kenneth B. Murov for appellant.

Breckenridge Ingles (Julianne B. Dias, Guardian *ad litem* for the minor
child; Martin, Ingles & Ingles, Ltd.; Foard & Dias. P.C., on brief), for
appellees.


By memorandum opinion dated October 30, 2007, a divided panel of this Court affirmed the

judgment of the trial court.  We stayed the mandate of that decision and granted rehearing *en banc*.  Upon

rehearing *en banc*, it is ordered that the stay of this Court's October 30, 2007 mandate is lifted and the

judgment of the trial court is affirmed for the reasons stated in the majority memorandum opinion in Joseph

C. Florio v. Barbara E. Clark, William B. Clark and Joyce Childers, No. 2424-06-1 (Va. Ct. App. Oct. 30,

2007), and we adopt that opinion as our own.

Judge Humphreys would reverse the trial court for the reasons set forth in the dissenting opinion

of the October 30, 2007 panel.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **4th** *day of* **December, 2007**.

Joseph C. Florio, Appellant,

against Record No. 2424-06-1
Circuit Court Nos. CH02000025-01 through CH02000027-01

Barbara E. Clark, William B. Clark
and Joyce Childers, Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On November 9, 2007 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on October 30, 2007, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on October 30, 2007 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established: Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter. It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Willis
Argued at Chesapeake, Virginia


JOSEPH C. FLORIO

v.        Record No. 2424-06-1

BARBARA E. CLARK, WILLIAM B. CLARK
  AND JOYCE CHILDERS

MEMORANDUM OPINION[*] BY
JUDGE JERE M. H. WILLIS, JR.
OCTOBER 30, 2007

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Von L. Piersall, Jr., Judge Designate

Kenneth B. Murov for appellant.

Breckenridge Ingles (Julianne B. Dias, Guardian *ad litem* for the
minor child; Martin, Ingles & Ingles, Ltd.; Foard & Dias, P.C., on
brief), for appellees.


Joseph C. Florio appeals the award of legal and physical custody of his child to the

child's maternal aunt, Barbara E. Clark, and her husband, William B. Clark.  He contends the

trial court (1) failed to give due regard to the primacy of his parental relationship with his child

as required by Code § 20-124.2(B) and (2) erred in its custody determination because the Clarks

"did not sustain their burden to prove the existence of clear and convincing evidence that the best

interests of [the child] required that legal and primary physical custody be awarded to" them.

We affirm the judgment of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

On appeal, we view the evidence and all reasonable inferences in the light most favorable to the Clarks as the parties prevailing below. See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

In January 1996, Mary Childers gave birth to a child fathered by Florio. By the time the child was born, the unmarried parents had separated. On April 17, 1996, with the consent of both Mary Childers and Florio, the juvenile and domestic relations district court awarded sole physical custody of the child to Mary Childers. Later that year, Mary Childers moved in with her sister and brother-in-law, the Clarks. Seven months later, she moved to her own residence a short distance away. In June 2001, she became ill and her mother, Joyce Childers, moved into her home to help her. When she was hospitalized in January 2002, she placed the child with the Clarks.

In March 2002, Mary Childers died. The Clarks and Florio sought custody of the child. On October 6, 2004, the trial court issued a final order awarding custody to the Clarks and Joyce Childers. Florio appealed that ruling to this Court.

In Florio v. Clark, Record No. 2633-04-1, slip op. at 12-13 (Va. Ct. App. July 26, 2005) (Florio I), we held "that the trial court abused its discretion in excluding the updated home study and in excluding the social worker's testimony relating to the statutory best-interests factors." We reversed and remanded the case for a new custody hearing "[b]ecause these erroneous rulings sufficiently tainted the evidence before the trial court, especially as the excluded evidence pertained to the child's best interests . . . ." Id., slip op. at 13.

On remand, the trial court awarded custody of the child to the Clarks. This appeal followed.

<u>Analysis</u>

"In issues of child custody, 'the court's paramount concern is always the best interests of the child.'" <u>Vissicchio v. Vissicchio</u>, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting <u>Farley v. Farley</u>, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990)). <u>See</u> Code § 20-124.2(B). "Because the trial court heard the evidence at an *ore tenus* hearing, its decision 'is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it.'" <u>Piatt v. Piatt</u>, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998) (quoting <u>Venable v. Venable</u>, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986)). "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." <u>Bottoms v. Bottoms</u>, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995).

In determining the best interests of a child, the trial court must consider the statutory factors identified in Code § 20-124.3. "The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest. . . ." Code § 20-124.2(B).

"'In a custody dispute between a parent and non-parent, the law presumes that the child's best interests will be served when in the custody of its parent.'" <u>Bottoms</u>, 249 Va. at 413, 457 S.E.2d at 104 (quoting <u>Judd v. Van Horn</u>, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954)). "Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when certain factors are established by clear and convincing evidence." <u>Bailes v. Sours</u>, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986) (footnote omitted). Those factors include: (1) parental unfitness, <u>Forbes v. Haney</u>, 204 Va. 712, 715-16, 133 S.E.2d 533, 535-36 (1963); (2) a previous order of divestiture, <u>McEntire v. Redfearn</u>, 217 Va. 313, 316, 227 S.E.2d 741, 743 (1976);

- 3 -

(3) voluntary relinquishment, <u>Shortridge v. Deel</u>, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983);

(4) abandonment, <u>Patrick v. Byerley</u>, 228 Va. 691, 695, 325 S.E.2d 99, 101 (1985); and

(5) special facts and circumstances, <u>Wilkerson v. Wilkerson</u>, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973).

"Once the presumption favoring parental custody has been rebutted, the parental and non-parental parties stand equally before the court, with no presumption in favor of either, and the question is the determination of the best interests of the child according to the preponderance of the evidence." <u>Walker v. Fagg</u>, 11 Va. App. 581, 586, 400 S.E.2d 208, 211 (1990).

"The circumstances that might justify denying a parent custody of his or her child in favor of a non-parent will vary from case to case." <u>Brown v. Burch</u>, 30 Va. App. 670, 687, 519 S.E.2d 403, 411 (1999).

The trial court concluded that the Clarks had proved by clear and convincing evidence special facts and circumstances rebutting the presumption in favor of Florio's custody and requiring placement of the child with them. The evidence supports this holding.

Florio initially agreed that the child's mother, Mary Childers, was properly and should be the child's custodian. In her will, Mary Childers nominated her sister, Mary Clark, as the child's guardian and nominated her mother, Joyce Childers, as alternate guardian. While this was not a determining factor, it was a properly considered circumstance. By awarding custody of the child to the Clarks, the trial court complied with the directive of his mother, the person Florio had agreed was best suited to be in charge of his upbringing and welfare.

Florio failed to document his employment or to verify the stability and dependability of his income. He stated that he works with his father operating a kennel, but admitted he receives neither a paycheck nor a regular draw. He had filed no tax returns acknowledging his claimed income. Although he testified he was in the process of building his own residence, he currently

had no home and lived with his father. During Mary Childers' life, he did not support the child and had limited contact with him.

During his entire life, the child has enjoyed a close relationship with the Clarks and has resided with them for significant periods of time. When he was six months old, he and his mother moved in with the Clarks, who helped care for him. When he and his mother moved a short distance away to their own residence, the Clarks maintained close contact with him, vacationing together and seeing him two to three times a week. During this time, William Clark spent time with the child, helped him with his homework, and took him to soccer practice. When his mother became ill in June 2001, the child lived with Joyce Childers, and the Clarks assisted with his daily care. As Mary Childers' condition worsened, the Clarks provided the child additional care. He moved in with them for the three months prior to his mother's death. Following his mother's death, he continued to live with the Clarks, except for a three-month period, during which he resided with Florio, who refused to allow him contact with the Clarks or Joyce Childers.

Prior to Mary Childers' death, Florio had little contact with the child. He exercised his visitation infrequently. He provided no support. He was not involved in the child's schooling, extracurricular activities, or general upbringing. Although his contact with the child increased after Mary Childers' death, he remains only slightly involved in the child's daily life. He has not demonstrated that he can meet the child's educational and emotional needs. While he lived with Florio, the child exhibited fatigue and his schoolwork suffered.

The child has a settled position in the Clarks' household. He has frequent contact with his grandmother, Joyce Childers. The Clarks have successfully addressed and served his special needs. He struggled during his early school years. The Clarks explored the reasons for this, and through medication, tutoring, and heavy involvement in the child's schooling, have addressed

them. They work closely with the child and routinely meet with his teachers. The child's schoolwork and ability to concentrate have improved greatly.

In every case concerning child custody and visitation, the trial court's judgment is guided by a single, unvarying standard. The welfare of the child is the primary, paramount, and controlling consideration. All other matters are subordinate. See <u>Mullen v. Mullen</u>, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948). That determination lies within the trial court's discretion and is reversible only upon a showing that the court abused its discretion. See <u>M.E.D. v. J.P.M.</u>, 3 Va. App. 391, 398, 350 S.E.2d 215, 220 (1986).

Having considered the totality of the circumstances present in this case, we hold that the trial court did not err in finding clear and convincing evidence of special and unique circumstances rebutting the presumption in favor of awarding custody to Florio and requiring denial of custody to him. We further hold that the trial court did not err in finding that the child's best interests would be served by granting custody to the Clarks and in making that award.

<u>Affirmed.</u>

Humphreys, J., dissenting.

I respectfully dissent from the analysis and holding of the majority.  In this case, the trial court improperly applied a "best interests of the child" analysis in making a finding of "special facts and circumstances."  Because I believe the evidence was insufficient as a matter of law for a finding of special facts and circumstances, I would reverse the judgment of the trial court, and remand the case for further proceedings consistent with this analysis.

It is true that "[i]n all child custody cases, including those between a parent and non-parent, the best interests of a child are paramount and form the lodestar for the guidance of the court in determining the dispute."  Mason v. Moon, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989) (quoting Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986)).  However, "in custody disputes between a natural parent and a non-parent, the law *presumes* the best interest of the child will be served when in the custody of the natural parent."  Id. (emphasis added).  To overcome the presumption favoring the parent, the nonparent must prove by clear and convincing evidence that:  (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute extraordinary reasons to take the child from the parent, or parents.  Bailes, 231 Va. at 100, 340 S.E.2d at 827.  In this case, the trial court relied solely upon the last rationale to support its decision to award custody to the Clarks.

"[C]ircumstances that might [constitute extraordinary reasons to] deny[] a parent custody of his or her child in favor of a non-parent will vary from case to case."  Brown v. Burch, 30 Va. App. 670, 687, 519 S.E.2d 403, 411 (1999).  However, some factors a court may consider include

> 1) the age of the child when care was assumed by the non-parent;
> 2) the period of time elapsed between the parent's loss of custody
> and his or her attempt to regain custody; 3) the intensity and
> genuineness of the parent's desire to obtain custody of the child;

and 4) the stability and certainty of the child's future in the parent's custody.

<u>Id.</u>

A finding that the presumption has been rebutted does not, *ipso facto*, mean that custody goes to the nonparent. <u>See</u> <u>Walker v. Fagg</u>, 11 Va. App. 581, 585-86, 400 S.E.2d 208, 211 (1991). Indeed, "[o]nce the presumption favoring parental custody has been rebutted, the parental and non-parental parties stand equally before the court, with no presumption in favor of either, and the question [only then becomes] the determination of the best interest of the child according to the preponderance of the evidence." <u>Id.</u> at 586, 400 S.E.2d at 211.

Thus, a trial court is first required to determine, as a threshold question, whether or not the nonparent has overcome the presumption that the best interests of the child are served by placing the child with the parent. If the trial court finds that the nonparent has not overcome this presumption, then the trial court need proceed no further and must award custody to the parent. If the trial court finds that the nonparent has overcome the presumption, then the trial court must proceed to make a finding as to which party would better suit the best interests of the child, and award custody to that party.

In this case, the trial court reversed the order in which the requisite findings should have been made, stating in its analysis:

> I'm concerned about the best interest of the child. I have considered the statute, especially the requirements of [Code § 20-124.3],[1] and also the other statutes that are applied and I've

---

[1] Code § 20-124.3 provides:

> In determining best interests of a child for purposes of determining custody or visitation arrangements including any *pendente lite* orders pursuant to § 20-103, the court shall consider the following:
>
> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;

- 8 -

considered the facts and the law . . . [a]nd I think there are . . .
special facts and circumstances in this case.

The trial court then listed the evidence it believed supported its finding of special facts

and circumstances. Specifically, the trial court noted the fact that Florio did not originally have

custody of the child, and had not participated much in supporting the child when the child was

2. The age and physical and mental condition of each parent;

3. The relationship existing between each parent and each child,
giving due consideration to the positive involvement with the
child's life, the ability to accurately assess and meet the emotional,
intellectual and physical needs of the child;

4. The needs of the child, giving due consideration to other
important relationships of the child, including but not limited to
siblings, peers and extended family members;

5. The role that each parent has played and will play in the future,
in the upbringing and care of the child;

6. The propensity of each parent to actively support the child's
contact and relationship with the other parent, including whether a
parent has unreasonably denied the other parent access to or
visitation with the child;

7. The relative willingness and demonstrated ability of each parent
to maintain a close and continuing relationship with the child, and
the ability of each parent to cooperate in and resolve disputes
regarding matters affecting the child;

8. The reasonable preference of the child, if the court deems the
child to be of reasonable intelligence, understanding, age and
experience to express such a preference;

9. Any history of family abuse as that term is defined in
§ 16.1-228. If the court finds such a history, the court may
disregard the factors in subdivision 6; and

10. Such other factors as the court deems necessary and proper to
the determination.

The judge shall communicate to the parties the basis of the
decision either orally or in writing.

with his mother. The trial court also mentioned that Florio had not helped much with the child

after Childers became ill. Instead, Childers and the child briefly moved in with the Clarks. Also

important to the trial court's decision was the fact that Childers had designated the Clarks as the

child's guardians in her will. The trial court also noted that Florio had been "less than forthright"

in his answers to social workers investigating the case, on his tax return statements, and in his

testimony. Finally, the trial court stressed that the child had special needs, and Florio lacked the

necessary income and health insurance to suitably address those needs. The trial court then

awarded custody to the Clarks, because they had "proven for the last several years that they

[could] be of great service to [the child,] [had] made arrangements for [] counseling, for []

education . . . [and] done all the things that a mother and father would do." For the following

reasons, I believe the evidence is insufficient to overcome Virginia's strong presumption in favor

of the natural parent.

In making its decision, the trial court improperly relied on several facts that are irrelevant

as a matter of law to a finding of special circumstances. For example, the testamentary wishes of

the child's mother are of no legal significance in supplying "special circumstances" sufficient to

overcome the presumption in favor of the father.[2] Similarly, the counseling services and other

---

[2] Code § 31-2 states:

> Every parent may by his last will and testament appoint [] a
> guardian of the person of his minor child . . . but no guardian of the
> person of a minor other than a parent shall be entitled to the
> custody of the person of his ward so long as either parent survives
> and such surviving parent is a fit and proper person to have the
> custody of the child.

See also Judd v. Van Horn, 195 Va. 988, 994-95, 81 S.E.2d 432, 435 (1954) ("[W]here the
custody of children is granted to their mother . . . such custody . . . only establishes the right of
custody between the two spouses during their lives, and upon the death of the mother her right
does not descend *nor can it be transmitted*, but that right of the father to the custody of the
children is revived, provided, of course, he is a person suitable for the custody of the children."
(quoting 128 A.L.R. 990) (emphasis added)).

arrangements made by the Clarks for the benefit of the child, while relevant to an analysis of who could provide for the best interests of the child, are of no moment in overcoming the presumption in favor of a natural parent. To hold otherwise, as the majority does, effectively eliminates the two-step analysis required by Walker and substitutes a "bootstrap" rationale where the child's best interest will necessarily supply the special circumstances sufficient to deprive a natural parent of the custody of his child. The remaining facts relied upon by the trial court in finding the existence of "special circumstances" were that Florio did not originally have custody of the child, that Florio lacked the necessary income and health insurance to suitably address the child's special needs, and that Florio had been "less than forthright" to the investigating social worker and the IRS.

In my view, a parent's income level and the availability of health insurance, while also relevant in a "best interests of the child" analysis, are not proper considerations in determining the existence of "special circumstances" sufficient to warrant transfer of custody to a nonparent. To hold otherwise would effectively deprive poor or less affluent parents of the benefit of the presumption that their children should remain in their custody. Moreover, while I certainly do not condone a lack of candor by a parent to social workers who are investigating issues relating to the custody of their children or the misrepresentation of one's income to the IRS, such lack of candor in my view is insufficient standing alone to overcome the presumption in favor of a natural parent under the clear and convincing standard.

Put more succinctly, based on my reading of the record, it is clear to me that the trial court improperly conflated the issues of the best interest of the child with whether the Clarks had overcome the presumption in favor of custody with Florio by clear and convincing evidence. This is not to say that both findings cannot be made based on the same evidence. However, the evidence presented by the Clarks, which was specifically relied upon by the trial court, was

- 11 -

insufficient as a matter of law under a "clear and convincing" standard to overcome the presumption that custody of the child should be with his natural parent.

In Burch, we affirmed an award of custody to a nonparent upon a showing of "special and unique circumstances" sufficient to overcome the parental presumption. In that case, Robert Burch married Virginia Brown in 1989 and became the stepfather of Brown's three-year-old son. 30 Va. App. at 681-82, 519 S.E.2d at 409. During the marriage, Burch was the child's primary caretaker. Brown developed an addiction to alcohol and drugs, and in January 1992, took the child and moved in with another man. Burch filed for custody in April 1992. The juvenile and domestic relations district court granted Burch custody of the child on August 12, 1992, and Brown appealed to the circuit court. Id. at 682, 519 S.E.2d at 409.

Brown took no further action on her appeal until November 1996, at which time she sought custody of her son. Id. By that time, the court found that she had "made an impressive, . . . positive turn in her life," and "used major initiatives as a non custodial parent to stay involved with this young man." Id. at 682-83, 519 S.E.2d at 409 (omission in original). The court also found that Burch had cared for the child very well. Id. at 684, 519 S.E.2d at 410. Furthermore, Burch fostered the child's relationship with both Brown and the child's natural father, and the child excelled in music, athletics, and academics. Id. at 682-83, 519 S.E.2d at 409. In addition, the child wanted to remain with Burch, and the guardian *ad litem* recommended that joint custody be placed with Burch and the child's natural father. Id. at 683, 519 S.E.2d at 409.

On appeal we affirmed, finding the record sufficient to support the "special and unique circumstances" that justified the custody award. Specifically, we noted that the child "had continuously lived with Burch for six years at the time of the custody hearing, and has now been in Burch's custody for more than seven years." Id. at 688, 519 S.E.2d at 412. We also noted that

"[d]espite filing a timely appeal to the circuit court in August 1992, Brown took no legal action to overturn the juvenile court's order for more than four years." Id. Furthermore, we noted that the child would have been adversely affected if the circuit court transferred custody to Brown. Id.

The Supreme Court of Virginia also found the existence of "special circumstances" sufficient to warrant custody to a nonparent in Bailes. In that case, Jean Bailes and Wayne Sours married in 1971, had a son, Sean, in 1972, and divorced in 1975. 231 Va. at 97, 340 S.E.2d at 825. Although the divorce decree contained no provision concerning custody, the child lived with his father after the divorce. Wayne remarried in October 1975, and Jean in 1977. Id. Although Jean visited her son regularly for the first eleven months after the divorce, her visits diminished appreciably over the years, culminating in "only 'eight or ten' [visits] during a nine-year period." Id. at 98, 340 S.E.2d at 825-26. Wayne died in 1983. Id. at 98, 340 S.E.2d at 825. After his death, Sean began to talk with his mother on the telephone and to reluctantly visit her home every other weekend. Id. at 98, 340 S.E.2d at 826. Jean then sought custody of her son, who did not wish to live with her. Instead, he wanted to stay with his stepmother, Elaine, with whom he had a close relationship. Id. at 97, 340 S.E.2d at 825.

Although both Jean and Elaine were found to be fit and proper persons to have custody, psychological testimony indicated that moving Sean to Jean's home would have an adverse impact on him. Id. at 99, 340 S.E.2d at 826. Jean nevertheless argued that because she was found to be a fit parent with a suitable home, she had a superior right to her son's custody. The trial court agreed that a presumption in the law favored Jean, but found that his stepmother had overcome the presumption "by clear, cogent and convincing evidence." Id.

On appeal, the Supreme Court affirmed the trial court in light of the fact that Sean's contact with Jean "has been so limited that it is fair to say she is 'virtually a stranger'" to him.

Id. at 101, 340 S.E.2d at 827 (quoting Patrick v. Byerley, 228 Va. 691, 695, 325 S.E.2d 99, 101 (1985)). The Court further noted that "Elaine ha[d] nurtured Sean as her son from infancy to adolescence[,]" and was, to Sean, his "mother." Id. On these facts, the Court concluded that "the likelihood of inflicting serious harm to Sean is so clearly established by the evidence that the presumption favoring the mother is repugnant to the child's best interest[,]" and affirmed the trial court's award of custody to Elaine. Id. at 101, 340 S.E.2d at 827-28.

Unlike Burch and Bailes, the record here contains insufficient evidence to support the finding that the Clarks overcame the presumption that the child's best interests would be served in the custody of his father. Indeed, both home studies performed on Florio indicate that Florio is a fit parent capable of providing his son a suitable home, clothing, and food, and also capable of meeting all of his son's physical and emotional needs. Florio, like Brown, proved to be unfit in the child's early years, but has made impressive and positive changes in his own life amounting to a return to fitness. Unlike Brown, however, Florio has maintained and developed a very close relationship with his son through consistent visitation and loving involvement. Furthermore, Florio sought custody of his son immediately upon the death of the child's mother and has aggressively and diligently pursued custody of him in the courts for more than four years. In contrast to the children in both Burch and Bailes, Florio's son desires to live with him, and the home studies indicate that Florio is an appropriate and suitable custodian for his son, namely, that no harm would result from a change in custody.

Thus, despite the Clarks' assertion to the contrary, Florio's case is neither "very similar" to the facts in Burch, nor those of Bailes. Burch involved a mother who had shown no interest whatsoever in obtaining custody of her son for more than four years, and Bailes involved a mother who had all but abandoned her son for more than a decade. In short, the evidence in

Florio's case does not show by clear and convincing evidence that special facts and circumstances constitute extraordinary reasons to take the child from Florio.

The trial court improperly substituted a "best interests of the child" analysis for a finding of special facts and circumstances. The evidence adduced at trial may well have been sufficient to prove by the preponderance of the evidence that the best interests of the child favored placement with the Clarks. However, I do not believe the evidence was sufficient to overcome the presumption favoring placement with the natural parent by clear and convincing evidence. Accordingly, I would reverse and remand for further proceedings consistent with this analysis.