COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia

**PUBLISHED**

PATRICK DAYTIONE TAYLOR

v.        Record No. 0427-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STUART A. RAPHAEL
AUGUST 1, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Aaron C. Forstie, Senior Assistant Public Defender, for appellant.

Ryan D. Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General; Leanna C. Minix, Assistant Attorney General, on
brief), for appellee.


The trial court convicted Patrick Taylor on a charge of violating Code § 18.2-287.4,

which prohibits the carrying of a "semi-automatic center-fire . . . pistol" with an extended

magazine on a public street in certain localities, including the City of Richmond.  Because the

Commonwealth failed to prove that Taylor's pistol was "center-fire," however, we vacate the

conviction and dismiss the charge.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Officer J. Anthony Wilson was on patrol in his police cruiser in "a very violent," "high crime, high drug" neighborhood in Richmond when he drove past Taylor, who was openly carrying a pistol with an extended magazine under his arm. The barrel of the gun was pointing behind him, toward Officer Wilson. According to Wilson, whose training and experience with firearms came from "five years with the department and ten years in the military," Taylor's firearm was a Taurus PT 111, "capable of holding 12 rounds." The extended magazine was "probably double" the length of the handle of the firearm and held 24 rounds. Wilson described the firearm as a "semiautomatic handgun."

After Wilson and Taylor looked at each other, Taylor "picked up his pace" and headed for a car parked across the street. Wilson exited his vehicle, walked toward Taylor, and asked him if the firearm was loaded. Taylor responded that there "was one loaded in the head," which Wilson understood to mean "there was a round actually chambered, so if [Taylor] pull[ed] the trigger, it[] [was] going to shoot." Wilson did not know at that point whether Taylor had a concealed-carry permit.

Wilson took the firearm from Taylor but did not place him in handcuffs. Checking Taylor's identity, Wilson determined that although he was not a felon, Taylor did not have a concealed-carry permit. Wilson wrote Taylor a summons, set a court date, and explained to Taylor that a concealed-carry permit was required to carry a pistol with an extended magazine in public. Taylor was charged with carrying a loaded firearm in public in violation of Code § 18.2-287.4.

Taylor moved to suppress the evidence, arguing that Officer Wilson detained him in violation of the Fourth Amendment because he lacked reasonable suspicion to stop him. Officer

- 2 -

Wilson testified at the suppression hearing, laying out the facts set forth above. The court denied Taylor's motion, finding that Wilson had a "reasonable and articulable suspicion of criminal activity," so it was reasonable to stop and temporarily detain Taylor to investigate.

The court then proceeded immediately to trial, at which the Commonwealth adopted the testimony Wilson had just given. The Commonwealth declined to present additional evidence and did not offer the firearm itself into evidence. Taylor moved to strike the Commonwealth's evidence because "the statute makes it very clear that the firearm in question has to be center-fire," and "[t]here's no evidence that this firearm is center-fire." The Commonwealth opposed Taylor's motion to strike, arguing that the court could "infer . . . that it's a center-fire firearm" based on Wilson's testimony about the make and model of the firearm, and Wilson's "conversation with Mr. Taylor in which he indicated there was a loaded magazine, [and] that there was one in the chamber."

The court agreed with the Commonwealth, found Taylor guilty, and sentenced him to 12 months' incarceration with 11 months and 15 days suspended.

ANALYSIS

On appeal, Taylor argues that the trial court erred by denying his motion to suppress and his motion to strike the evidence. Because our answer to his second assignment of error resolves this case, we begin there.

A. *The evidence was insufficient to convict (Assignment of Error 2).*

Taylor argues that the Commonwealth failed to prove that he possessed a "center-fire" pistol, which he contends is an element of the offense under Code § 18.2-287.4. Determining the elements of an offense presents "a question of law that we review de novo. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not

be set aside on appeal unless it is plainly wrong." *Lawlor v. Commonwealth*, 285 Va. 187, 223-24 (2013).

Code § 18.2-287.4 prohibits carrying certain firearms in public in certain urbanized localities, absent a concealed-carry permit or other statutory exception. As relevant here, the statute makes it

> unlawful for any person to carry a loaded . . . semi-automatic center-fire rifle or pistol . . . equipped . . . with a magazine that will hold more than 20 rounds of ammunition . . . on or about his person on any public street, . . . public park or any other place . . . open to the public in the [City] of . . . Richmond.

Code § 18.2-287.4. The statute exempts, among other individuals, "any person having a valid concealed handgun permit." *Id.*

Taylor does not dispute that the Commonwealth proved most of the elements of the offense, including that Taylor was carrying a loaded, semi-automatic pistol equipped with a magazine that could hold more than 20 rounds of ammunition. He argues, however, that the Commonwealth failed to prove that he possessed a semi-automatic "center-fire rifle or pistol" as specified in Code § 18.2-287.4(a).[1] We agree.

That the firearm must be "center-fire" is plainly an element of the offense that the Commonwealth must prove beyond a reasonable doubt. "The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we [examine] the statute."'" *Eley v. Commonwealth*, 70 Va. App. 158, 163 (2019) (alterations in original) (quoting *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420 (2013)). The requirement that the weapon be "center-

---

[1] The parties do not dispute that the phrase "semi-automatic center-fire" modifies both "rifle" and "pistol," a reading consistent with the "Series-Qualifier Canon." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").

- 4 -

fire" appears in the same sentence as the other elements of the offense, including that the weapon be "loaded," "semi-automatic," and "equipped . . . with a magazine that will hold more than 20 rounds of ammunition." Proof that it is center-fire is therefore an essential element. *Accord Dillard v. Commonwealth*, 28 Va. App. 340, 346 (1998) (holding that the Commonwealth must prove that a sawed-off shotgun is ".225 caliber" or greater as an element of the possession offense under Code §§ 18.2-299 and -300).

Firearms are classified as either center-fire or rim-fire. *See* Nicholas J. Johnson et al., *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* 534 (2d ed. 2017). The difference depends on how the cartridge is primed.[2] In center-fire priming, the priming compound is enclosed in a "primer cup," which is inserted into a pocket in the center of the bottom of the cartridge. *Id.* When the gun's trigger is pulled, the firing pin strikes the primer in the center of the cartridge, firing the bullet. *Id.* In contrast, "rimfire priming does not use a separate primer cap." *Id.* Instead, the "priming compound is applied directly to the inside of the bottom of the cartridge case, inside a cavity in the cartridge rim." *Id.* Pulling the trigger causes the firing pin to strike the primer in the cartridge rim, igniting the gunpowder and firing the bullet. *Id.*

---

[2] "A single unit of ammunition is called a *cartridge* or a *round*." Johnson, *supra*, at 529. "Properly speaking, one loads a gun with *cartridges* or *rounds*, not with bullets. A bullet is simply one part of a cartridge—the metal projectile . . . that is launched at high speed from the gun upon firing." *Id.* at 530. The primer is a component of the cartridge.

> When a gun is loaded with a cartridge and the hammer falls, the gun's firing pin sharply strikes the primer. The blow causes a pressure-sensitive chemical compound in the primer to ignite and emit an instantaneous hot flash. The flash then ignites the gunpowder inside the case. The gunpowder burns in a fraction of a second, releasing expanding hot gases, whose pressure pushes the bullet free from the case, and launches the bullet down the barrel.

*Id.* at 534.

The Commonwealth failed to prove that Taylor's gun was a "center-fire" pistol. Officer Wilson's testimony established that the firearm was a Taurus PT 111 capable of holding 12 rounds, that it was a semi-automatic handgun, and that the extended magazine held 24 rounds. The phrase "center-fire" was mentioned for the first time only when Taylor moved to strike the evidence at the close of the Commonwealth's case-in-chief. The Commonwealth presented no evidence or testimony that a Taurus PT 111 is a center-fire pistol. It did not introduce the firearm itself into evidence.[3] And it presented no evidence that whether the pistol was center-fire could be determined from other attributes of the weapon that were in evidence. *Cf. Dillard*, 28 Va. App. at 347-48 & n.1 (remanding for retrial where the caliber of the shotgun could be calculated from its gauge, a fact in evidence). The trial court thus lacked evidence to support its conclusion that the weapon was center-fire, so the conviction must be reversed. *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020).

The Commonwealth responds that "the circuit court found the firearm was a semi-automatic center-fire firearm based on [the court's] familiarity with firearms and related offenses." But if the Commonwealth means that the trial judge based that finding on his own personal knowledge of firearms, it was reversible error.

Virginia law is clear that the "[i]ndividual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record. The consideration of facts outside of and not made a part of the record is improper." *Bernau v. Nealon*, 219 Va. 1039, 1041-42 (1979); *Darnell v. Barker*, 179 Va. 86, 93 (1942) (same). In other words, when the fact in question "is not a fact

---

[3] *Cf. Person v. Commonwealth*, 60 Va. App. 549, 556 (2012) (finding evidence sufficient to prove that the defendant's sawed-off shotgun was ".225 caliber or greater" where the firearm itself was introduced into evidence); *Taylor v. Commonwealth*, 10 Va. App. 260, 269 (1990) (same).

'universally regarded as established by common notoriety,' it is irrelevant that the judge may have personal knowledge of such a practice." *Griswold v. Commonwealth*, 19 Va. App. 477, 484 (1995) (quoting *State Farm Mut. Auto Ins. Co. v. Powell*, 227 Va. 492, 497 (1984)).

Nor was the pistol's status as a center-fire gun established as a matter of judicial notice. To take judicial notice of a fact outside the record, the fact cannot be "subject to reasonable dispute in that it is either (1) common knowledge or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Va. R. Evid. 2:201(a). The Commonwealth did not claim that a Taurus PT 111 is commonly known to be a center-fire pistol, nor that its status as such could be readily determined by an unimpeachable source. Nor did the trial court take such judicial notice. "Although 'a trial court need not intone the words "judicial notice[,]" . . . the evidence, the arguments of the parties and the statements of the trial court must demonstrate clearly that the trial court has taken judicial notice of the fact before [a] party may rely upon such notice on appeal.'" *Williams v. Commonwealth*, 71 Va. App. 462, 490 (2020) (emphasis omitted) (quoting *Williams v. Commonwealth*, 289 Va. 326, 333-34 (2015)). That did not happen here. *Accord Dillard*, 28 Va. App. at 346-47 (finding the record insufficient to show that the trial court took judicial notice that the sawed-off shotgun at issue met the .225 caliber requirement under Code § 18.2-299). And having faced no request for the court to take judicial notice, Taylor was not afforded the "opportunity to be heard as to the propriety of" the court's doing so. Va. R. Evid. 2:201(c).

In short, because the Commonwealth failed to prove that Taylor's pistol was "center-fire," the evidence was insufficient to convict him of violating Code § 18.2-287.4.

### B. We decline to consider the constitutional question (Assignment of Error 1).

Taylor argues that "[a]t the point of the seizure, Officer Wilson did not possess the requisite reasonable articulable suspicion to justify the seizure." But "[t]he doctrine of judicial

restraint dictates that we decide cases 'on the best and narrowest grounds available.'"

*Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). And it is "[a] fundamental and longstanding precept of this doctrine . . . that 'unnecessary adjudication of a constitutional issue' should be avoided." *Id.* (quoting *Bell v. Commonwealth*, 264 Va. 172, 203 (2002)). We therefore "will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond v. United States*, 572 U.S. 844, 855 (2014) (quoting *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)). As Justice Brandeis explained in one of the seminal cases establishing the doctrine, "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). Because we can dispose of this case on the ground that there was insufficient evidence to convict, we decline to consider whether Wilson violated Taylor's Fourth Amendment rights by detaining him.

CONCLUSION

Code § 18.2-287.4 required proof beyond a reasonable doubt that Taylor's pistol was "center-fire." Because the Commonwealth failed to prove that element, the trial court erred in denying Taylor's motion to strike the Commonwealth's evidence. We therefore vacate his conviction and dismiss the charge.

*Reversed.*